**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| TAYLORE CUNNINGHAM | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:19-CV-00210-G |
| | § | |
| ADVANTIX DIGITAL, LLC F/K/A | § | |
| ADVANTIX INTERNET MARKETING, LLC | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Ashley Scheer
State Bar No. 00784320
David Schlottman
State Bar No. 24083807

JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000
(214) 953-5822 - Fax
Email:  ascheer@jw.com
Email:  dschlottman@jw.com

ATTORNEYS FOR DEFENDANT
ADVANTIX DIGITAL, LLC

October 28, 2019

I.      STATEMENT OF THE CASE & GROUNDS FOR SUMMARY JUDGMENT .............1

II.     STATEMENT OF UNDISPUTED FACTS ............................................................1

        A.      Background of Advantix and the Account Manager position. ................1

        B.      Advantix first hires Max Williams and then Taylore Cunningham as
                account managers..........................................................................................2

        C.      Cunningham receives raises and eventually becomes the second-highest
                paid individual in the company...................................................................4

        D.      Cunningham is terminated for misconduct and insubordination. ............5

III.    ARGUMENTS & AUTHORITIES ......................................................................8

        A.      Title VII Sex Discrimination ...................................................................9

                1.      Legal Standard ...............................................................................9

                2.      Cunningham's pay discrimination claim fails. .........................10

                3.      Cunningham was not discharged because of her sex.................13

        B.      Title VII Retaliation Claim ....................................................................17

                1.      Legal Standard .............................................................................17

                2.      Advantix did not retaliate against Cunningham.......................18

        C.      Title VII Sexual Harassment Claim .......................................................19

                1.      Legal Standard .............................................................................20

                2.      Cunningham cannot establish supervisor harassment...............21

                3.      Cunningham's client harassment claim should be dismissed. .................22

                        a.      The client harassment claim is untimely........................22

                        b.      As a matter of law, Cunningham's conduct demonstrates
                                the alleged client harassment was not unwelcome. .......24

                        c.      There is no basis to hold Advantix liable for the alleged
                                harassment.......................................................................29

        D.      Equal Pay Act Claim...............................................................................29

                1.      Legal Standard .............................................................................29

                2.      The EPA claim is barred by the statute of limitations because there
                        is no evidence that Advantix's alleged violation of the EPA was
                        "willful." ......................................................................................30

                3.      The alleged pay differential was based on a factor other than sex. ..........31

        E.      FLSA Misclassification Claim.................................................................33

                1.      Legal Standard .............................................................................33

                2.      Cunningham is exempt under the administrative and outside sales
                        exemptions. ..................................................................................35

a.  At all times, Cunningham was paid a regular salary of at least $72,000. ...............................................................36

b.  Cunningham performed exempt administrative work. .................36

c.  Cunningham exercised discretion and independent judgment with respect to matters of significance. ........................39

d.  Cunningham performed exempt outside sales work.....................41

e.  Cunningham's primary duties were exempt work. ........................42

3.  Beginning in 2017, Cunningham was exempt under the highly compensated employee exemption. ...........................................44

4.  Cunningham's FLSA claims are subject to a two-year statute of limitations. ...............................................................................46

IV.  CONCLUSION.................................................................................................47

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amendola v. Bristol-Myers Squibb Co.*,
  558 F. Supp. 2d 459 (S.D.N.Y. 2008)....................................................................38

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................................................8

*Antoniewicz v. Univ. of Tex. Health & Sci. Ctr.*,
  No. H-14-2083, 2015 WL 3771007, 2015 U.S. Dist. LEXIS 78237 (S.D. Tex.
  June 17, 2015)........................................................................................................11

*Blasingame v. Eli Lilly & Co.*,
  No. H-11-4522, 2013 WL 5707324, 2013 U.S. Dist. LEXIS 150461 (S.D.
  Tex. Oct. 18, 2013) ................................................................................................11

*Bocage v. M-I, L.L.C.*,
  No. 17-6124, 2019 WL 4305812, 2019 U.S. Dist. LEXIS 154607 (E.D. La.
  Sept. 11, 2019) ......................................................................................................45

*Brown v. CSC Logic, Inc.*,
  82 F.3d 651 (5th Cir. 1996) ..................................................................................17

*Cardiel v. Apache Corp.*,
  559 F. App'x 284 (5th Cir. 2014) .........................................................................15

*Carley v. Crest Pumping Techs., L.L.C.*,
  890 F.3d 575 (5th Cir. 2018) ................................................................................35

*Cash v. Craft Cycle Co.*,
  508 F.3d 680 (1st Cir. 2007).........................................................................39, 41

*Casiano v. AT&T Corp.*,
  213 F.3d 278 (5th Cir. 2000) ................................................................................19

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..................................................................................................8

*Chaney v. New Orleans Pub. Facility Mgmt., Inc.*,
  179 F.3d 164 (5th Cir. 1999) ..........................................................................16, 19

*Cleveland v. City of Elmendorf*,
  388 F.3d 522 (5th Cir. 2004) ................................................................................33

*Dacar v. Saybolt, L.P.*,
914 F.3d 917 (5th Cir. 2018) ...........................................................................30

*Devere v. Forfeiture Support Assocs., L.L.C.*,
613 F. App'x 297 (5th Cir. 2015) .....................................................................19

*Dubaz v. Johnson Controls World Serv.*,
163 F.3d 1357 (5th Cir. 1998) ..........................................................................15

*Encino Motorcars, LLC v. Navarro*,
138 S. Ct. 1134 (2018) ......................................................................................34

*Everett v. Cent. Miss., Inc. Head Start Program*,
444 F. App'x 38 (5th Cir. 2011) .......................................................................19

*Faludi v. U.S. Shale Sols., L.L.C.*,
936 F.3d 215, 2019 U.S. App. LEXIS 249365 (5th Cir. Aug. 21, 2019) ...............34

*Fields v. Stephen F. Austin State Univ.*,
611 F. App'x 830 (5th Cir. 2015) (per curiam) ................................................30

*Garnder v. CLC of Pascagoula, L.L.C.*,
915 F.3d 320 (5th Cir. 2019) ............................................................................20

*Giles v. Shaw Sch. Dist.*,
655 F. App'x 998 (5th Cir. 2016) .....................................................................15

*Gowesky v. Singing River Hosp. Sys.*,
321 F.3d 503 (5th Cir. 2003) ............................................................................20

*Greco v. Velvet Cactus, LLC*,
No. 13-3514, 2014 WL 2943600, 2014 U.S. Dist. LEXIS 87782 (E.D. La.
June 27, 2014) .............................................................................................24, 28

*Hall v. Haworth, Inc.*,
No. H-12-1776, 2014 U.S. Dist. LEXIS 192180 (S.D. Tex. Apr. 3, 2014) ............42

*Harris v. Double G. Coatings, Inc.*,
114 F.3d 1184 (5th Cir. 1997) ..........................................................................15

*Harville v. City of Hous.*,
935 F.3d 404 (5th Cir. 2019) ......................................................................14, 16

*Hernandez v. Yellow Transp., Inc.*,
670 F.3d 644 (5th Cir. 2012) ................................................................20, 21, 24

*Hines v. State Room, Inc.*,
   665 F.3d 235 (1st Cir. 2011) ...........................................................................38, 41

*Hockman v. Westward Commc'ns, LLC*,
   407 F.3d 317 (5th Cir. 2004) ..................................................................................21

*Holmes v. N. Tex. Health Care Laundry Coop. Ass'n*,
   304 F. Supp. 3d 525 (N.D. Tex. 2018) ....................................................22, 24, 28

*Howard v. United Parcel Serv., Inc.*,
   447 F. App'x 626 (5th Cir. 2011) (per curiam) ....................................................20

*Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*,
   579 F.3d 546 (5th Cir. 2009) ...................................................................30, 31, 47

*Jewel Tea Co. v. Williams*,
   118 F.2d 202 (10th Cir. 1941) ................................................................................12

*Kanida v. Gulf Coast Med. Personnel LP*,
   363 F.3d 568 (5th Cir. 2004) ..................................................................................18

*Kess v. Mun. Emps. Credit Union, Inc.*,
   391 F. Supp. 2d 637 (D. Md. 2004) ........................................................................12

*Lauderdale v. Ill. Dep't of Human Servs.*,
   876 F.3d 904 (7th Cir. 2017) ..................................................................................32

*Ledbetter v. Goodyear Tire & Rubber Co., Inc.*,
   127 S.Ct. 2162 (2007) .............................................................................................46

*Mack v. John L. Wortham & Son, L.P.*,
   541 F. App'x 348 (5th Cir. 2013) ...............................................................10, 17, 21

*Manaway v. Med. Ctr. of Se. Tex.*,
   430 F. App'x 317 (5th Cir. 2011) .................................................................15, 17

*Marquez v. Voicestream Wireless Corp.*,
   115 F. App'x 699 (5th Cir. 2004) ...........................................................................24

*Mayberry v. Vought Aircraft Co.*,
   55 F.3d 1086 (5th Cir. 1995) ..................................................................................13

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)...................................................................................................9

*McHenry v. One Beacon Ins. Co.*,
   No. 03-CV-4916, 2005 U.S. Dist. LEXIS 46573 (E.D.N.Y. Aug. 29, 2005)..........................32

*Mengistu v. Miss. Valley State Univ.*,
   716 F. App'x 331 (5th Cir. 2018) ........................................................................13

*Meza v. Intelligent Mexican Mktg.*,
   720 F.3d 577 (5th Cir. 2013) ..............................................................................35

*Miles v. Tex. Dep't of Motor Vehicles*,
   773 F. App'x 199 (5th Cir. 2019) ........................................................................18

*Morgan v. Denton Indep. Sch. Dist.*,
   No. 4:12-CV-290, 2013 WL 4418447, 2013 U.S. Dist. LEXIS 115121 (E.D.
   Tex. Aug. 14, 2013) ............................................................................................18

*Nevada v. Dep't of Labor*,
   218 F. Supp. 2d 520 (E.D. Tex. 2016) ................................................................45

*Phillips v. TXU Corp.*,
   194 F. App'x 221 (5th Cir. 2006) ........................................................................30

*Price v. Fed. Express Corp.*,
   283 F.3d 715,720 (5th Cir. 2002) .......................................................................13

*Reich v. John Alden Life Ins. Co.*,
   126 F.3d 1 (1st Cir. 1997) ..............................................................................38, 41

*Reznick v. Associated Orthopedics & Sports Med., P.A.*,
   104 F. App'x 387 (5th Cir. 2004) ............................................................12, 32, 33

*Richardson v. Prairie Opportunity, Inc.*,
   470 F. App'x 282 (5th Cir. 2012) ........................................................................15

*Rychorcewicz v. Welltec, Inc.*,
   768 F. App'x 252 (5th Cir. 2019) ........................................................................35

*Schaefer-LaRose v. Eli Lilly & Co.*,
   679 F.3d 560 (7th Cir. 2012) ..............................................................................38

*Schmidt v. Eagle Waste & Recycling, Inc.*,
   599 F.3d 626 (7th Cir. 2010) ........................................................................36, 44

*Shepherd v. Comptroller of Pub. Accounts of State of Tex.*,
   168 F.3d 871 (5th Cir. 1999) ..............................................................................22

*Steele v. Leasing Enters.*,
   826 F.3d 237 (5th Cir. 2016) ........................................................................31, 47

*Swartz v. Windstream Commc'ns, Inc.*,
    429 F. App'x 102 (3d Cir. 2011) ..........................................................38

*Thibodeaux v. Tex. Dep't of Crim. Justice*,
    660 F. App'x 286 (5th Cir. 2016) ..........................................................15

*Tullous v. Tex. Aquaculture Processing Co., LLC*,
    579 F. Supp. 2d 811 (S.D. Tex. 2008) ...................................................34

*Turner v. Baylor Richardson Med. Ctr.*,
    476 F.3d 337 (5th Cir. 2007) ..............................................................17

*Verkuilen v. MediaBank, LLC*,
    646 F.3d 979 (7th Cir. 2011) ..............................................................39

*Wallace v. Methodist Hosp. Sys.*,
    271 F.3d 212 (5th Cir. 2001) ........................................................12, 15

*Westrich-James v. Dall. Morning News, Inc.*,
    No. 3:07-cv-1329-G, 2012 U.S. Dist. LEXIS 132368 (N.D. Tex. Sept. 17,
    2012) ...........................................................................................30

*Wiley v. Am. Elec. Power Serv. Corp.*,
    287 F. App'x 335 (5th Cir. 2008) ..........................................................32

*Wymola v. Tex. A&M Univ.*,
    No. 00-21001, 2002 U.S. App. LEXIS 29243 (5th Cir. Apr. 10, 2002)..................33

*Zhao v. Kaleida Health*,
    No. 04-cv-0467-C, 2007 U.S. Dist. LEXIS 103253 (W.D.N.Y. Aug. 8, 2007)...........24, 28

**Statutes**

29 U.S.C. § 206(d) ...............................................................................30

29 U.S.C. § 207 ..................................................................................33

29 U.S.C. § 207(a)(1) ...........................................................................33

29 U.S.C. § 213 ..................................................................................33

29 U.S.C § 213(a)(1)............................................................................34

29 U.S.C. § 255(a) ..............................................................................46

42 U.S.C. § 2000e-5(e)(1)........................................................... *passim*

42 U.S.C. § 2000e-5(e)(3)(A) ..................................................................10

Fair Labor Standards Act ................................................................................................1

**Other Authorities**

29 C.F.R. 541.500(a)(1)–(2) .........................................................................................41

29 C.F.R. § 541.200 ...................................................................................35, 36, 39, 40

29 C.F.R. § 541.201(b) ................................................................................................36

29 C.F.R. § 541.201(c) ................................................................................................37

29 C.F.R. § 541.202(b) ...........................................................................................40, 41

29 C.F.R. § 541.203(c) ................................................................................................38

29 C.F.R. § 541.500 .....................................................................................................42

29 C.F.R. § 541.500(a) ................................................................................................35

29 C.F.R. § 541.601 .....................................................................................................34

29 C.F.R. § 541.602(a) ...........................................................................................36, 45

29 C.F.R. § 541.700(a) ................................................................................................43

29 C.F.R. § 541.700(a)–(b) .....................................................................................43, 44

29 C.F.R. § 541.700(b) ................................................................................................43

29 C.F.R. § 541.701 ...............................................................................................42, 46

29 C.F.R. § 541.708 ...............................................................................................35, 44

69 Fed. Reg. 22,122 (April 23, 2004) ......................................................................45, 46

81 Fed. Reg. 32,391 (May 23, 2016) ...........................................................................45

84 Fed. Reg. 51230 (Sept. 27, 2019) ..........................................................................45

Federal Rule of Civil Procedure Rule 56(c) ..................................................................8

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2019-8 (July 1, 2019) .............................................................................................................................45

## I.      STATEMENT OF THE CASE & GROUNDS FOR SUMMARY JUDGMENT

This is an employment case in which Plaintiff Taylore Cunningham has taken the kitchen-sink approach.  She alleges sex discrimination, retaliation, sexual harassment, violations of the Equal Pay Act, and misclassification under the Fair Labor Standards Act.

The undisputed evidence is that Cunningham was the second highest-paid employee (male or female) in the whole company.  She was paid and performed duties that made her exempt, and there is no basis—legal or otherwise—to say she was underpaid.  Cunningham was ultimately terminated for ongoing misconduct and for unambiguously refusing to perform her job duties, and there is no evidence these reasons were a pretext for discrimination or retaliation.  The Court should grant summary judgment and dismiss this case entirely.

## II.      STATEMENT OF UNDISPUTED FACTS

The facts below are established by the deposition testimony of Plaintiff Taylore Cunningham and the Declaration of Edward Ferreri.  The evidence in support of Defendant's Motion for Summary Judgment is contained in an Appendix filed with this Motion.  Because Cunningham has asserted a number of claims that are factually unrelated, the statement of facts below sets forth a general overview of Cunningham's employment with Advantix.  Additional undisputed facts relevant to particular claims are in the argument section of this Brief.

### A.      Background of Advantix and the Account Manager position.

Defendant Advantix Digital, LLC provides on-line marketing and consulting services.  The company assists clients with on-line advertising strategies and services, including social-media presence, paid-search advertising (such as Google AdWords), search-engine optimization, online reputation management, and additional related services. During relevant periods, Advantix employed approximately 20 individuals.  The company's senior management is Peter Handy

(Chief Executive Officer), Ed Ferreri (Chief Financial Officer), and Amine Bentahar (Chief Operating & Digital Officer).  (Ex. A, Ferreri Decl. ¶ 3, App. 1.)

One position at Advantix is the Account Manager role (which is sometimes also referred to as an Account Executive or Account Director).  The general duties of an account manager are to generate and manage new client accounts.  Managing client accounts requires the account manager to oversee all aspects of an account, which includes, among other things, relationship management, performance reporting, identifying client needs, proposing solutions, and interfacing with the Advantix operations team to ensure that processes are in place to deliver services promised to a client.  The account manager's business generation duties require the employee to be out of the office and meeting with current or prospective clients to negotiate and secure new contracts for services.  (Ex. A, Ferreri Decl. ¶ 4, App. 2.)

Account managers report to a supervisor, but management involvement in their day-to-day duties is minimal.  Additionally, although the position is considered entry-level, the account management role is vital to Advantix.  Account managers ensure existing clients remain satisfied and that new clients are developed—both of which are essential to Advantix sustaining and growing its revenue stream.  (Ex. A, Ferreri Decl. ¶ 5, App. 2.)

## B.   Advantix first hires Max Williams and then Taylore Cunningham as account managers.

In February 2016, Advantix engaged a recruiting firm (Xtreme Consulting) to assist in locating a new account manager.  (Ex. A, Ferreri Decl. ¶ 6, App. 2.)  Shortly after being engaged, Xtreme Consulting referred Max Williams to Advantix.  The recruiting firm described Mr. Williams favorably, and noted he had a pending job offer with one of Advantix's competitors. Xtreme Consulting used that fact to negotiate a larger compensation package for Mr. Williams. After negotiations, Mr. Williams agreed to a compensation package with an annual base salary of

$85,000 and a monthly commission opportunity of 20% of his accounts' monthly gross profit that exceeded $10,000.  (Ex. A, Ferreri Decl. ¶ 7, App. 2.)

After Mr. Williams accepted his offer, Xtreme Consulting made an unsolicited email referral to Advantix and proposed the company hire Cunningham.  (Ex. A, Ferreri Decl. ¶ 8, App. 2; Ferreri Decl. Ex. 1, App. 6-10.)  In that email, Xtreme Consulting stated Cunningham was seeking an annual salary of $75,000.  (Ferreri Decl. Ex. 1, App. 6-10.)  Prior to submitting this proposal, Cunningham discussed it with Xtreme Consulting.  (Ex. B, Pl.'s Dep. 33:21–36:7, App. 17-20.)  In that conversation, she learned from the recruiter that Max Williams had accepted an offer at an annual salary of $85,000.  (*Id.*)  Cunningham also talked to Mr. Williams about his offer from Advantix.  (*Id.*)  Despite Cunningham's knowledge that Mr. Williams's salary was higher (Ex. B, Pl.'s Dep. 167:2–7, App. 115), Cunningham's recruiter proposed her to Advantix at an annual salary of $75,000.  (Ferreri Decl. Ex. 1, App. 6-10.)

Advantix was initially hesitant to hire Cunningham.  Because Advantix had just hired an account manager (Mr. Williams), the company questioned whether it had the budget to hire another account manager.  Xtreme Consulting and Cunningham ultimately persuaded Advantix otherwise based on the idea that Cunningham would be effective and bring in enough new business to economically justify her position.  Based on these business circumstances, Advantix proposed a compensation package with a lower base salary but higher sales commission percentage.  The idea of this structure was that it would incentivize Cunningham to sell more services and, thus, produce the revenue necessary to justify hiring a second account manager.  The decision to hire Cunningham was made collectively by Mr. Handy, Mr. Ferreri, and Mr. Bentahar.  (Ex. A, Ferreri Decl. ¶ 9, App. 2.)

After negotiations with Xtreme Consulting, Advantix and Cunningham ultimately agreed on a compensation package with a $72,000 base salary and a monthly commission opportunity of 20% of her accounts' monthly gross profit that exceeded $9,000.[1]  (Ex. A, Ferreri Decl. ¶ 10, App. 2; Pl.'s Dep. 156:10–25, App. 114; *id.* at 161:23–166:11, App. 109-114; Pl.'s Dep. Ex. 9, App. 217.)  Thus, initially, Cunningham's base salary was $1000 less per month than Mr. Williams's base salary; however, she needed to produce $1,000 less per month in sales than Mr. Williams to become commission eligible. Despite knowing that her base salary would be less than that of Mr. Williams, Cunningham still accepted the job offer with Advantix.  (Ex. B, Pl.'s Dep. 167:2–7, App. 217.)[2]

Cunningham began work at Advantix on approximately March 9, 2016.  As an account manager, Cunningham performed the duties described above.  Cunningham was permitted to work from home or away from the office, and she frequently did so.  The only time Cunningham was required to be in the office was for weekly status meetings.  (Ex. A, Ferreri Decl. ¶ 11, App. 2.) As set forth in the argument below, Cunningham corroborated these facts in deposition testimony.

## C.   Cunningham receives raises and eventually becomes the second-highest paid individual in the company

At some point in summer of 2016, Cunningham complained to Advantix senior management that it was unfair that Mr. Williams's base salary was $1,000 more per month.  (Ex. B, Pl.'s Dep. 171:8–172:20, App. 116-117; *id.* at 173:3–20, App. 118.)  In response, Advantix raised Cunningham's monthly base salary on a temporary basis by $1,000 effective October 2016

---

[1] The recruiter handled all aspects of negotiating Cunningham's compensation.  Cunningham does not know what transpired in negotiations between Xtreme Consulting and Advantix.  (Ex. B, Pl.'s Dep. 165:18–166:11, App. 113-114.)

[2] Mr. Williams's employment terminated in November 2016.  (Ex. A, Ferreri Decl. ¶ 13, App. 3; Pl.'s Dep. 179:25–180:5, App. 120-121.)

(annualizing to a base salary of $84,000.00).  (Ex. B, Pl.'s Dep. 180:11–181:13, App. 121-122; Pl.'s Dep. Ex. 10, App. 218.)  Advantix made the raise permanent in January 2017.  (Ex. B, Pl.'s Dep. 182:14–183:13, App. 123-124; Pl.'s Dep. Ex. 11, App. 219-220.)  At all times during her employment, Cunningham's base salary was paid in equal installments twice per month.[3]  (Ex. A, Ferreri Decl. ¶ 10, App. 2.)

Over time, in addition to her annual base salary of $84,000, Cunningham began to earn substantial sales commissions as well.  In 2016, her total compensation was approximately $64,357.91 (Ex. B, Pl.'s Dep. 185:25–186:15, App. 125-126.)  In 2017, Cunningham's total compensation was $126,040.39.  (Ex. B, Pl.'s Dep. 185:6–19, App. 125; Pl.'s Dep. Ex. 12, App. 221-224.)  For the period of March 2017 to December 2017, Cunningham was the second highest paid employee in the company.  (Ex. A, Ferreri Decl. ¶ 12, App. 3.)

**D.**     **Cunningham is terminated for misconduct and insubordination.**

Advantix terminated Cunningham's employment effective December 15, 2017.  The decision to terminate was made collectively by the same individuals that decided to hire Cunningham—Mr. Handy, Mr. Ferreri, and Mr. Bentahar.  Cunningham was terminated due to multiple acts of misconduct over the course her employment that ultimately culminated in serious insubordination.  (Ex. A, Ferreri Decl. ¶ 14, App. 3.)

In January 2017, Cunningham, along with other Advantix employees, attended the National Auto Dealers Association convention in New Orleans, Louisiana.  During one night of the trip, Cunningham went out on her own and became severely intoxicated.  She returned to the hotel and was unable to locate her room due to her state.  She was so intoxicated that eventually

---

[3] The company treated Cunningham as "exempt" under the Fair Labor Standards Act, and did not pay her overtime for hours worked over 40 in a single workweek (if any).

the front desk of the hotel had to call Mr. Bentahar, who confirmed she was an employee of Advantix and that the hotel could give a new key card to Cunningham to access her room.  (Ex. A, Ferreri Decl. ¶ 15, App. 3.)

Throughout her employment, Cunningham treated coworkers and management in a condescending and demeaning manner.   Advantix persistently received complaints from Cunningham's coworkers that she had been rude or inconsiderate.  (Ex. A, Ferreri Decl. ¶ 16, App. 3.)  Indeed, at her deposition, Cunningham admitted to "raising her voice" at one coworker.  (Ex. B, Pl.'s Dep. 236:9–237:1, App. 147-148.)   Cunningham's workplace interactions were so negative that many coworkers informed Advantix management they would not work with her.  (Ex. A, Ferreri Decl. ¶16 , App. 3.)

Over time, Advantix began to perceive that Cunningham viewed herself as an independent business and that she felt she was not required to observe instructions from management.  In fact, in the months before her termination, Cunningham proposed to Advantix management that she should become an independent contractor and enter a consulting arrangement with Advantix (rather than remaining employed).  (Ex. A, Ferreri Decl. ¶ 17, App. 3; Pl.'s Dep. 201:24–203:4, App. 129-131.)  Her reason for this proposal was that "[t]hings were not working out" as an employee of Advantix.  (Ex. B, Pl.'s Dep. 201:24–202:7, App. 129-130.)

Other actions by Cunningham supported Advantix's perception.   In one instance, Cunningham instructed Advantix management that any communications and work instructions to a particular employee (Taylor Owen), "needed" to go through her.  Among other reasons, this was improper because Ms. Owen was an employee of Advantix and did not exclusively report to Cunningham.  (Ex. A, Ferreri Decl. ¶ 18, App. 3.)  In another instance, the Director of Performance Marketing (Sinead Hultman) attempted to assign an operations employee to service a particular

client account.  (Ex. B, Pl.'s Dep. 238:12–240:14, App. 149-151; Pl.'s Dep. Ex. 17, App. 225-226.)  As Director of Performance Marketing (a management-level position), this was within Ms. Hultman's scope of duties.  (Ex. A, Ferreri Decl. ¶ 18, App. 3.)  In response, Cunningham said she was making an "executive decision" to overrule Ms. Hultman's assignment and to instead keep another individual on the account.  (Ex. B, Pl.'s Dep. 238:12–240:14, App. 149-151; Pl.'s Dep. Ex. 17, App. 225-226.)  It was improper for Cunningham to dictate terms to a director-level manager.  (Ex. A, Ferreri Decl. ¶ 18, App. 3.)

The situation reached a breaking point in December 2017.  On December 7, 2017, Cunningham texted her supervisor Jon Bailey and informed him that she was "retracting" all of her contracts from prospective clients until her stipulations were met.  (Ex. B, Pl.'s Dep. 241:19–248:11, App. 152-159; Pl.'s Dep. Ex. 18, App. 227-230.)  In deposition testimony, Cunningham stated that by "retracting" contracts, she meant, "Contracts had been sent back to me for revision, and I wasn't going to press the client until I was confident in how that would be handled."  (Ex. B, Pl.'s Dep. 242:10–15, App. 153.)  In other words, Cunningham was refusing to do her job.

After Mr. Bailey reiterated the need for Cunningham to close the contracts, Cunningham again refused.  She stated:

> I can't in good faith send that contract out knowing there's a chance it won't be handled to my liking.  Honestly I think you amine and I need to have a meeting about me going 1099 [i.e., independent contractor] bc I am not willing to lose another account and relationship due to insubordination or lack of performance and results.  I'm at the point where I need autonomy when it comes to my money *otherwise I'm not doing it*.

(Ex. B, Pl.'s Dep. Ex. 18 (emphasis added), App. 227-230.)  Cunningham admits that this exchange was her dictating to her supervisor that things needed to be done her way or else she needed to become a contractor.  (Ex. B, Pl.'s Dep. 244:20–245:19, App. 155-156.)

In subsequent messages on December 7, 2017, Mr. Bailey instructed Cunningham to attend a meeting at the office.  (Ex. B, Pl.'s Dep. Ex. 18, App. 227-230.)  In response, Cunningham said, "No thank you.  I have too much going on in my life to be played.  The contracts will get signed when I have autonomy over them."  (*Id.*)  Cunningham continued, "[I]f I have one more issue at Advantix I'm taking all of my business elsewhere bc I don't have time for this crap."  (*Id.*)

By this point, Advantix had enough.  In addition to the misconduct described above, Cunningham was now explicitly refusing to do her job and refusing to meet with her superiors.  One of the contracts that Cunningham "retracted" was a proposal that would have generated approximately $28,000 per month in revenue. To make matters worse, Cunningham was also dictating terms to Advantix and threatening to "take" all of her business elsewhere if her demands were not met.  Advantix terminated Cunningham's employment effective December 15, 2017 for the misconduct and insubordination described above.[4] (Ex. A, Ferreri Decl. ¶ 20, App. 3-4.)

## III.     ARGUMENTS & AUTHORITIES

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As the non-moving party, Cunningham must produce admissible evidence supporting each element of her various claims.  Mere existence of some factual dispute between the parties is insufficient.  Rather, an issue of fact is "material" only if the evidence is sufficient to support a reasonable jury verdict for the plaintiff.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246-52 (1986).

---

[4] Following her termination, Cunningham's account manager position was filled by Taylor Owen, a female employee. (Ex. A, Ferreri Decl. ¶ 21, App. 4.)

In her Complaint, Cunningham asserts five claims: (1) sexual harassment (Pl.'s Compl., Doc. 1, ¶ 33–42); (2) sex discrimination (*id.* ¶¶ 43–50); (3) retaliation (*id.* ¶¶ 51–57); (4) violations of the Equal Pay Act (*id.* ¶¶ 58–67); and (5) misclassification under the Fair Labor Standards Act (*id.* ¶¶ 68–75). Summary judgment is warranted on all of these claims. Cunningham was discharged for insubordination and poor performance and there is no evidence that Advantix improperly paid Cunningham or otherwise acted unlawfully.

## A.    Title VII Sex Discrimination

Cunningham alleges sex discrimination under Title VII. More specifically, she claims pay discrimination. (Pl.'s Compl., Doc. 1, ¶ 45.) Also, although not entirely clear, Cunningham may also claim that her termination was because of her sex. (Pl.'s Compl., Doc. 1, ¶¶ 21–22.) The Court should grant summary judgment on each of these claims.[5]

### 1.    Legal Standard

For sex discrimination claims relying on circumstantial evidence, like the one here, courts apply the three-tier model of proof established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* model, the plaintiff must first establish a *prima facie* case of discrimination. *Id.* The employer then must offer evidence of a legitimate, nondiscriminatory reason for its decision. *Id.* Once a reason is articulated, the plaintiff must come forward with substantial evidence that the employer's reason was a pretext for discrimination. *Id.* at 804.

Claims under Title VII are subject to strict time limitations. An aggrieved employee must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment

---

[5] The Complaint also alleges that Advantix discriminated against Cunningham in account assignments. (Pl.'s Compl., Doc. 1, ¶ 45.) However, at her deposition, Cunningham abandoned this allegation. (Ex. B, Pl.'s Dep. 223:24–224:1, App. 145-146.)

practice.  42 U.S.C. § 2000e-5(e)(1).  Claims based on an untimely administrative charge must be dismissed.  *See Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 355–57 (5th Cir. 2013).

### 2.  <u>Cunningham's pay discrimination claim fails.</u>

As noted above, Cunningham alleges pay discrimination under Title VII.  (Pl.'s Compl., Doc. 1, ¶ 45.)  At her deposition, Cunningham testified the basis of this claim is that a male co-worker, Max Williams, was paid $1,000 more in monthly base salary than Cunningham.  (Ex. B, Pl.'s Dep. 186:18–187:23, App. 126-127.)

Mr. Williams was hired by Advantix shortly before Ms. Cunningham; however, his employment terminated around November 2016.  (Ex. A, Ferreri Decl. ¶ 13, App. 3; Pl.'s Dep. 179:25–180:5, App. 120-121.)  Thus, the alleged discriminatory pay differential existed at the very latest until November 2016 when Mr. Williams was terminated.  The Court should grant summary judgment on Cunningham's pay discrimination claim under Title VII for two reasons.

<u>*First*</u>, the claim is time-barred under the 300-day charge filing requirement.  Under Title VII, "[A]n unlawful employment practice occurs, with respect to discrimination in compensation . . . when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice."  42 U.S.C. § 2000e-5(e)(3)(A).

As described above, November 2016 was the very last time Cunningham was affected by the allegedly discriminatory compensation structure.  Thus, Cunningham had 300 days from November 2016 to file a charge alleging pay discrimination.  Here, however, Cunningham did not file a charge until January 25, 2018, which is over 400 days from November 2016 and well outside

the applicable 300-day limitation period.[6]  Cunningham's pay discrimination claim under Title VII is untimely and should be dismissed.  *See, e.g.*, *Antoniewicz v. Univ. of Tex. Health & Sci. Ctr.*, No. H-14-2083, 2015 WL 3771007, 2015 U.S. Dist. LEXIS 78237, at *18–19 (S.D. Tex. June 17, 2015) (finding pay discrimination pay claim untimely where plaintiff submitted no proof that she received allegedly discriminatory paycheck within 300 days of filing an EEOC charge); *Blasingame v. Eli Lilly & Co.*, No. H-11-4522, 2013 WL 5707324, 2013 U.S. Dist. LEXIS 150461, at *17–20 (S.D. Tex. Oct. 18, 2013) (same).

*Second*, even if the claim is timely, it still fails.  The $1,000 monthly difference between Cunningham and Mr. Williams's base salary is based on legitimate, non-discriminatory reasons, and Cunningham cannot establish those reasons are a pretext for sex discrimination.

The first non-discriminatory reason is that both Cunningham and Mr. Williams negotiated their compensation packages, and, knowing Mr. Williams's salary, Cunningham *herself* requested a lower salary.  As described above, Xtreme Consulting separately negotiated the compensation packages (base salary and commission) of Mr. Williams and Cunningham.  Xtreme Consulting referred Mr. Williams to Advantix first.  (Ex. A, Ferreri Decl. ¶ 7, App. 2.)  The recruiting firm noted that Mr. Williams had a pending job offer with one of Advantix's competitor, and used that fact to attempt to secure Mr. Williams a higher salary.  (*Id.*)  After negotiations in which Advantix attempted to obtain a lower salary, the parties agreed on an annual base salary of $85,000.  (*Id.*)

By contrast, after Mr. Williams accepted his job offer, Xtreme Consulting referred Cunningham to Advantix and stated she desired an annual base salary of $75,000.  (Ex. A, Ferreri Decl. ¶ 8, App. 2.)  After further negotiation, like those conducted with Mr. Williams, the parties

---

[6] The three-hundredth day preceding January 25, 2018 is approximately March 31, 2017.  Any Title VII claim based on alleged unlawful employment practices before March 31, 2017 is thus untimely.  42 U.S.C. § 2000e-5(e)(1).

agreed to an annual base salary of $72,000.  (*Id.*)  Cunningham accepted this offer knowing that Mr. Williams's base salary was $85,000.  (Ex. B, Pl.'s Dep. 167:2–7, App. 115.)  The difference between the base salaries of Mr. Williams and Cunningham was a product of these compensation negotiations—*during which Cunningham requested a lower base salary than Mr. Williams*.  This is a legitimate, non-discriminatory reason.  *Cf. Reznick v. Associated Orthopedics & Sports Med., P.A.*, 104 F. App'x 387, 391–92 (5th Cir. 2004) (holding that salary negotiation where alleged comparator had a competing job offer was a legitimate factor "other than sex" under the Equal Pay Act); *see also Kess v. Mun. Emps. Credit Union, Inc.*, 391 F. Supp. 2d 637, 645 (D. Md. 2004) (holding that salary negotiations were a legitimate, non-discriminatory reason under Title VII).

There is an additional non-discriminatory reason for the salary differential:  Cunningham and Mr. Williams were hired under different business circumstances that explain their compensation.  When Advantix hired Cunningham, the company had just hired another account manager, Max Williams.  (Ex. A, Ferreri Decl. ¶ 7, App. 2.)  Because of that recent hire, Advantix questioned whether it had the budget to hire Cunningham.  (*Id.*)  Xtreme Consulting and Cunningham convinced Advantix she would bring in enough new business to economically justify her position.  (*Id.*)  Based on these business circumstances, the parties agreed to a compensation package that had a lower base salary (which was necessary because Advantix questioned whether it could even afford a second account manager) but a higher sales commission potential (which would incentivize Cunningham to make sales and justify her position).  (*Id.*)  This is yet another legitimate, non-discriminatory reason.

Because Advantix had legitimate reasons for its action, Cunningham bears the heavy burden of establishing that Advantix's reason was a pretext for sex discrimination.  To carry this burden, Cunningham must produce "substantial" evidence.  *Wallace v. Methodist Hosp. Sys.*, 271

F.3d 212, 220 (5th Cir. 2001) (quoting *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001)). The ultimate question is not whether Advantix's decision was correct, but instead, whether "discrimination lay at the heart of [its] decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002); *see Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

Cunningham cannot show pretext or intentional discrimination. There is no evidence that Advantix set Cunningham's base salary at $72,000 and below that of Mr. Williams because of her sex. Indeed, Cunningham testified she does not know why Advantix set her initial salary as it did. (Ex. B, Pl.'s Dep. 176:5–12, App. 119.) The undisputed evidence is that Cunningham's base salary was the product of arms' length negotiation in which she was represented by a professional recruiter and during which Cunningham *herself* proposed a base salary that she *knew* was less than that of Mr. Williams. Then, despite knowing the difference between Mr. Williams's salary and that being offered to her, Cunningham still accepted the job with Advantix. No rational factfinder could conclude that Advantix committed intentional salary discrimination under these undisputed facts. *See Mengistu v. Miss. Valley State Univ.*, 716 F. App'x 331, 334–35 (5th Cir. 2018) (affirming summary judgment where plaintiff failed to offer substantial evidence that university's reason for pay differential was pretext for discrimination).

### 3.    Cunningham was not discharged because of her sex.

To the extent she is alleging such a claim, the Court should grant summary judgment on Cunningham's discriminatory discharge claim for two reasons. First, Cunningham cannot establish a prima facie case of discriminatory discharge. Second, Advantix terminated

Cunningham for misconduct and insubordination, and Cunningham cannot show these legitimate reasons were a pretext for sex discrimination.

To make a prima facie case of sex discrimination, Cunningham must produce evidence she (1) is a member of a protected class, (2) was qualified for the position that she held, (3) was subject to an adverse employment action, and (4) was replaced by someone outside of her protected class or treated less favorably than other similarity-situated employees who were not in her protected class. *Harville v. City of Hous.*, 935 F.3d 404, 409–10 (5th Cir. 2019). Cunningham has no evidence to establish the final element.

After Cunningham was terminated, her account manager position was not filled. Instead, Cunningham's existing accounts were transferred to Taylor Owen, a female employee who previously reported to Cunningham. (Ex. A, Ferreri Decl. ¶ 21, App. 4.) Cunningham was not replaced by someone outside of her protected class.

Additionally, there is no evidence Cunningham was treated less favorably than similarly situated male employees. To satisfy this element, Cunningham must submit evidence of a male employee treated better under "nearly identical circumstances." *Harville*, 935 F.3d at 410. "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)).

Here, there is no evidence of any nearly identical male employee who engaged in misconduct and insubordination similar to that of Cunningham but who was not terminated. Indeed, when asked in her deposition, Cunningham conceded she did not know of any male

comparators.  (Ex. B, Pl.'s Dep. 250:6–10; App. 161.)  Cunningham cannot establish the fourth element of her prima facie case, and the Court should grant summary judgment for this reason. *See Thibodeaux v. Tex. Dep't of Crim. Justice*, 660 F. App'x 286, 289 (5th Cir. 2016) (affirming summary judgment because plaintiff presented no evidence of nearly identical employees outside the protected class and, thus, failed to establish a prima facie case of discrimination); *Giles v. Shaw Sch. Dist.*, 655 F. App'x 998, 1002–03 (5th Cir. 2016) (same); *Cardiel v. Apache Corp.*, 559 F. App'x 284, 288–90 (5th Cir. 2014) (same).

Further, even if Cunningham could establish a prima facie case, Advantix had a legitimate, non-discriminatory reason for terminating Cunningham's employment.  As described above, Advantix believed that Cunningham had engaged in multiple instances of misconduct, which culminated in December 2017 with serious acts of insubordination.  *See supra* Section II.D.  That insubordination was that Cunningham, whose duties included generating new business, brazenly refused to close new business and refused to meet with her supervisors when instructed to do so. *See id.*  Misconduct and insubordination are legitimate, non-discriminatory reasons for action.  *See Richardson v. Prairie Opportunity, Inc.*, 470 F. App'x 282, 286 (5th Cir. 2012) (misconduct); *Manaway v. Med. Ctr. of Se. Tex.*, 430 F. App'x 317, 322 (5th Cir. 2011) (insubordination).

Because Advantix had legitimate reasons for action, Cunningham has the burden to produce "substantial" evidence of pretext.  *Wallace*, 271 F.3d at 220 (5th Cir. 2001).  Case law in the Fifth Circuit has long stressed that employment discrimination laws do not permit courts to sit as a super-personnel department micromanaging or weighing the wisdom of a company's employment decisions.  *See, e.g.*, *Dubaz v. Johnson Controls World Serv.*, 163 F.3d 1357, at *1 (5th Cir. 1998) ("Title VII does not allow a court to sit as a super-personnel department and micromanage a company's business decisions."); *Harris v. Double G. Coatings, Inc.*, 114 F.3d

1184, n. 4 (5th Cir. 1997) (court declined to "weigh the wisdom of any particular employment decision," but limited its inquiry to the existence of an unlawful discriminatory practice). Instead, as the Fifth Circuit recently reiterated in *Harville*: "The issue at the pretext stage is not whether the [employer's] reason was actually correct or fair, but whether the decisionmakers honestly believed the reason." *Harville v. City of Hous.*, 935 F.3d 404, 412 (5th Cir. 2019).

Here, Cunningham cannot present any evidence that Advantix did *not* honestly believe that she engaged in misconduct and insubordination. At her deposition, when asked whether she had any reason to doubt the sincerity of Advantix's belief that she had been insubordinate, Cunningham was unable to articulate a clear answer. (Ex. B, Pl.'s Dep. 249:32–250:10; App. 160-161.) Further, there can be no serious dispute Cunningham was in fact insubordinate. In deposition testimony, Cunningham defined "insubordination" as "[p]eople not doing what's asked of them and not pulling their weight and not doing the job they were hired to do." (*Id.* 246:23–247:4; App. 157-158.) That is exactly what she did. Cunningham's job was to generate and close new business. She refused to do so. Her supervisor directly instructed her to attend a meeting. She refused to do so. *See supra* Section II.D. Whether defined by Cunningham or a dictionary, this is textbook insubordination. As the Fifth Circuit has observed, "[i]n a case in which the employer has articulated a rational justification for terminating an employee, and the facts supporting that justification are not seriously disputed, the task of proving pretext becomes quite difficult." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999). No reasonable jury could doubt that Advantix honestly believed Cunningham had engaged in misconduct and insubordination and terminated her for those reasons.

The absence of discriminatory intent is reinforced by the same-actor inference. When the same actor both hires and fires a plaintiff, there is a presumption that the termination was not likely

the result of an improper discriminatory motive.  *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996).  Put differently, "it hardly makes sense to hire workers from a group one dislikes . . . only to fire them once they are on the job."  *Id.* (citing *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991)).

Here, Mr. Handy, Mr. Bentahar, and Mr. Ferreri were responsible for both hiring Cunningham and then terminating her employment approximately two years later for misconduct and subordination.  (Ex. A, Ferreri Decl. ¶ 14, App. 3.)  In the Fifth Circuit's words, "it hardly makes sense" that Mr. Handy, Mr. Bentahar, and Mr. Ferreri would hire Cunningham knowing she was a female only to fire her two years later because of that fact.  *See Brown*, 82 F.3d at 658.

There is no evidence of pretext or intentional sex discrimination, and the Court should grant summary judgment on Cunningham's discriminatory discharge claim.  *See Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 355–57 (5th Cir. 2013) (affirming summary judgment where employee failed to present evidence that insubordination was pretext for discrimination); *Manaway*, 430 F. App'x at 322 (same);  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (same).

**B.**     **Title VII Retaliation Claim**

Cunningham also alleges retaliation under Title VII.  (Pl.'s Compl., Doc. 1, ¶¶ 51–57.) Cunningham claims she was terminated in retaliation for complaining about the salary differential between her and Mr. Williams. (*See id.* ¶¶ 19–20.)  The Court should grant summary judgment on this claim.

**1.**     **Legal Standard**

Like discrimination claims, a burden-shifting framework is applied to retaliation claims under Title VII.  To establish a prima facie case of retaliation, Cunningham must show (1) she

engaged in activity protected by Title VII; (2) Advantix took an adverse employment action against her; and (3) a causal connection exists between that protected activity and the adverse employment action. *Miles v. Tex. Dep't of Motor Vehicles*, 773 F. App'x 199, 200 (5th Cir. 2019). If Cunningham establishes a prima facie case, then Advantix must produce evidence of a legitimate reason for the adverse action. *Id.* Cunningham then bears the burden to show that Advantix's reason is a pretext for unlawful retaliation. *Id.*[7]

## 2.   Advantix did not retaliate against Cunningham.

The Court should grant summary judgment on Cunningham's retaliatory discharge claim because she cannot establish a prima facie case of retaliation. Alternatively, Advantix had a legitimate reason for action, and there is no evidence this reason was a pretext for retaliation.

As to the first point, Cunningham cannot establish a prima facie case of retaliation because there is no evidence connecting the termination of her employment to any protected activity in which she may have engaged. In her deposition, Cunningham testified she complained in the summer of 2016 about the difference between her base salary and that of Mr. Williams and requested a $1,000 per month raise. (Ex. B, Pl.'s Dep. 71:8–72:20; App. 36-37.) Far from retaliating against her, Cunningham acknowledged that, in response to that complaint, Advantix gave her the $1,000 per month raise she requested effective October 2016. (*Id.* 180:11–181:13; App. 121-122.) Cunningham was terminated over a year later in December 2017. There is nothing suggesting Cunningham's complaints from the summer of 2016 caused her termination more than a year later, and the Court should grant summary judgment because Cunningham cannot make a

---

[7] If Cunningham alleges a retaliation claim under the FLSA or EPA, which is not clear from her Complaint, those claims are analyzed under the same framework, and summary judgment should be granted on those claims for the reasons below. *See Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 577 (5th Cir. 2004) (FLSA); *Morgan v. Denton Indep. Sch. Dist.*, No. 4:12-CV-290, 2013 WL 4418447, 2013 U.S. Dist. LEXIS 115121, at *3–4 (E.D. Tex. Aug. 14, 2013) (EPA).

prima facie case.  *See Everett v. Cent. Miss., Inc. Head Start Program*, 444 F. App'x 38, 44–48 (5th Cir. 2011) (affirming summary judgment where plaintiff failed to establish causal connection between alleged protected activity and adverse employment action).

Further, as described above, Advantix terminated Cunningham's employment for legitimate reasons: misconduct and insubordination.  *See supra* Section III.A.3.  Cunningham cannot carry her burden to show these reasons are a pretext for retaliation.  *See Devere v. Forfeiture Support Assocs., L.L.C.*, 613 F. App'x 297, 300–01 (5th Cir. 2015) (affirming summary judgment where plaintiff failed to produce evidence that employer's stated reason of insubordination was a pretext for retaliation); *Chaney*, 179 F.3d at 167–169 (reversing retaliation judgment for plaintiff where there was no evidence of pretext and plaintiff was discharged for insubordination).

Simply put, no reasonable factfinder could conclude that after giving Cunningham the raise she requested, Advantix then surreptitiously terminated her employment over a year later in retaliation for requesting that raise and fabricated claims of misconduct and insubordination as a pretext to disguise its actions.  The Court should grant summary judgment on Cunningham's retaliatory discharge claim.

## C.    Title VII Sexual Harassment Claim

Cunningham alleges a cause of action for sexual harassment under Title VII.  (Pl.'s Compl., Doc. 1, ¶¶ 33–42.)  The exact nature of this action is not clearly pleaded; however, it appears Cunningham alleges a sexually hostile work environment created by unspecified coworkers and by a client of Advantix.[8]  The Court should grant summary judgment on these claims.

---

[8] To the extent Cunningham intends to assert a quid pro quo harassment claim (which is not pleaded), the Court should grant summary judgment on that claim as well.  To survive summary judgment on such a claim, Cunningham must produce evidence from which a reasonable jury could find (1) that she suffered a "tangible employment action" and (2) that the action was causally related to the acceptance or rejection of the client's sexual harassment.  *Casiano v. AT&T Corp.*, 213 F.3d 278, 283–84 (5th Cir. 2000).  There is no such evidence here.  While Cunningham claims she was "forced" to solicit a client who had previously harassed her, she admits that Advantix did not discipline her when

1.      **Legal Standard**

The legal standard for workplace harassment is "high." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003). "[T]he Supreme Court has warned that these high standards are intentionally demanding to ensure that Title VII does not become a general civility code, and when properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace . . . ." *Howard v. United Parcel Serv., Inc.*, 447 F. App'x 626, 632 (5th Cir. 2011) (per curiam) (citations and internal quotation marks omitted) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 788 (1998)).

To make a hostile work environment claim, Cunningham must show that she: (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) there is a basis for liability on the part of the employer.  *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).  The final element depends on the status of the alleged harasser.  As the Fifth Circuit has stated, "Because the ultimate focus of Title VII liability is on the employer's conduct—unless a supervisor is the harasser, a plaintiff needs to show that the employer knew or should have known about the hostile work environment yet allowed it to persist . . . ."  *Garnder v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 321 (5th Cir. 2019).

Additionally, as noted above, claims under Title VII are subject to strict time limitations. An aggrieved employee must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1).  Claims based on an

---

she did not do so.  (Ex. B, Pl.'s Dep. 263:9–265:4, App. 166-168.)  Nothing in the record suggests Cunningham suffered a tangible employment action related to the client's alleged sexual harassment.

untimely administrative charge must be dismissed.  *See Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 355–57 (5th Cir. 2013).

### 2. <u>Cunningham cannot establish supervisor harassment.</u>

Cunningham alleges that "[m]ultiple demeaning comments based on gender made by Plaintiff's supervisors constituted sexual harassment."  (Pl.'s Compl., Doc. 1, ¶ 38.)  At her deposition, Cunningham identified the following allegations as the basis of that claim: (1) a "few times," Mr. Handy and others made comments about Cunningham's looks; (2) Mr. Bentahar complemented Cunningham and said, "You're a pretty girl.  You're charismatic. Doctors love to schmooze with you"; (3) Mr. Handy allegedly once stated, "My auto dealers would love if you and your friend came up there in . . . that pink dress that your friend was wearing the other day"; and (4) on approximately 5 occasions, a coworker told Cunningham that "you just sit there and look pretty" or similar words.  (Ex. B, Pl.'s Dep. 77:16–89:11, App. 41-53.)  The Court should grant summary judgment on this hostile work environment claim because there is no evidence that the alleged harassment affected a term, condition, or privilege of Cunningham's employment.

"Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hernandez*, 670 F.3d at 651.  Here, the comments cited by Cunningham fall short of the high standard for objectively severe harassment.  Additionally, Cunningham alleges these comments were made infrequently.  (*See* Pl.'s Dep. 77:16–89:11, App. 41-53.)  Under controlling law, this is not "pervasive" harassment.  The court should grant summary judgment.  *See Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326-29 (5th Cir. 2004) (concluding that male coworker's conduct did not affect a term, condition, or privilege of employment where, inter alia, he brushed against plaintiff's breasts and behind, once slapped her behind with a newspaper, and

once attempted to kiss plaintiff); *Shepherd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871, 872, 875 (5th Cir. 1999) (holding that employee's work environment was not rendered objectively hostile by co-worker remarking that plaintiff's "elbows are the same color as [her] nipples," repeatedly attempting to look down plaintiff's clothing, rubbing one of his hands from plaintiff's shoulder down to her wrist, and patting his lap and remarking "here's your seat" at meetings).

Finally, there is no evidence the isolated comments identified by Cunningham affected the terms or conditions of her employment.   As set forth above, throughout her employment, Cunningham received raises and eventually secured enough sales to become the second highest paid employee in the company.   *See supra* Section II.B-C.   The Court should grant summary judgment.   *See Holmes v. N. Tex. Health Care Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 543 (N.D. Tex. 2018) (granting summary judgment on hostile work environment claim where there was no evidence alleged harassment prevented plaintiff from performing her job, discouraged her from continuing to work for defendant, or that plaintiff failed to advance her career because of the harassment).

### 3.   <u>Cunningham's client harassment claim should be dismissed.</u>

Cunningham claims she was sexually harassed by a client (Mike Lopez) while employed at Advantix.   (Ex. B, Pl.'s Dep. 76:14–24, App. 40.)   The Court should grant summary judgment on this claim for multiple reasons.

### a.   <u>The client harassment claim is untimely.</u>

To make a timely claim under Title VII, a plaintiff must file a charge of discrimination within 300 days of the alleged harassment.   42 U.S.C. § 2000e-5(e)(1).   Cunningham filed her charge on January 25, 2018.   The three hundredth day preceding January 25, 2018 is approximately

March 31, 2017.  Thus, any claim based on alleged harassment occurring before March 31, 2017 is untimely.  42 U.S.C. § 2000e-5(e)(1).

Here, the alleged harassment took place before March 31, 2017, and Cunningham cannot establish she filed a timely charge of discrimination.  At her deposition, Cunningham identified three instances in which she had allegedly been harassed by Mr. Lopez when she worked at Advantix: (1) at the National Auto Dealers Association convention ("NADA") in New Orleans; (2) at a business development event in Scottsdale, Arizona; and (3) through unspecified text messages and phone calls.  (Ex. B, Pl.'s Dep. 266:7–277:7, App. 169-180.)

The alleged client harassment Cunningham identifies occurred before March 31, 2017. The NADA convention took place in January 2017.  (Ex. A, Ferreri Decl. ¶ 15, App. 3; Pl.'s Dep. 254:7–18, App. 162.)  The business development event in Scottsdale was in February 2017.  (Ex. A, Ferreri Decl. ¶ 22, App. 4; Pl.'s Dep. 267:15–22, App. 170.)   Finally, at her deposition, Cunningham could not recall and did not identify the date or content of any of the alleged harassing phone calls or text messages.

Cunningham acknowledged that, as she had requested, the purpose of meeting with Mr. Lopez at NADA was to introduce him to a coworker that would be handling his account (Jessi Rayhill).  (Ex. B., Pl.'s Dep. 257:8–258:3, App. 163-164; *id.* at 259:2–6, App. 165; *id.* at 263:4–8, App. 166; *id.* at 265:12–19, App. 168.)  Cunningham testified that after she introduced Ms. Rayhill to Mr. Lopez, "it was her [Ms. Rayhill's] problem now" (*id.* at 275:19–276:21, App. 178-179), and Cunningham did not identify any other inappropriate conduct directed towards her following the Scottsdale event in February 2017.

Because all of the alleged client harassment occurred prior to March 31, 2017, Cunningham failed to timely exhaust this claim and it should be dismissed.

### b.   As a matter of law, Cunningham's conduct demonstrates the alleged client harassment was not unwelcome.

To establish a hostile work environment, Cunningham must show she suffered "unwelcome" harassment.  *Hernandez*, 670 F.3d at 651.  "Unwelcome sexual harassment" includes "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee." *Marquez v. Voicestream Wireless Corp.*, 115 F. App'x 699, 701 (5th Cir. 2004) (quoting *Wyerick v. Bayou Steel Corp.,* 887 F.2d 1271, 1274 (5th Cir. 1989)).

Critically, the plaintiff's self-description does not determine whether conduct was unwelcome.  *Holmes v. N. Tex. Health Care Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 543 (N.D. Tex. 2018).  Instead, "[t]he Supreme Court holds that '[t]he correct inquiry is whether [plaintiff] *by her conduct* indicated that the alleged sexual advances were unwelcome.'" *Id.* (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64, (1986)).

While the question of whether conduct was unwelcome may sometimes involve credibility determinations, courts have entered summary judgment on the issue where the plaintiff's conduct is such that no reasonable juror could conclude the alleged harassment was unwelcome.  *See, e.g.*, *Holmes*, 304 F. Supp. 3d at 543–546; *Greco v. Velvet Cactus, LLC*, No. 13-3514, 2014 WL 2943600, 2014 U.S. Dist. LEXIS 87782 at *22–30 (E.D. La. June 27, 2014); *Zhao v. Kaleida Health*, No. 04-cv-0467-C, 2007 U.S. Dist. LEXIS 103253, at *25 (W.D.N.Y. Aug. 8, 2007).  Like these cases, Cunningham's undisputed conduct in this case demonstrates as a matter of law that the alleged client harassment was not unwelcome.

The essence of Cunningham's client harassment claim is that Advantix "forced" her to solicit business from a client (Mike Lopez) that had sexually harassed her when she worked at a former employer and that, in the course of doing so, she was again harassed by the client (1) at the

NADA conference, (2) at an event in Scottsdale, and (3) through calls and text messages.  (Ex. B, Pl.'s Dep. 266:7–277:7, App. 169-180.)  Cunningham's admitted conduct, however, completely contradicts her contention that she was "forced" to work with Mr. Lopez or that any alleged ensuing harassment was unwelcome.  This is so for many reasons.

_First_, Cunningham's history with Mr. Lopez conclusively belies her contention that working with Mr. Lopez was unwelcome.  While at prior employers, Cunningham continued to work and interact with Mr. Lopez despite claiming to have endured serious incidents of alleged harassment.

Cunningham met Mr. Lopez around May 2015 when she was working at the Dallas Morning News ("DMN").  (Ex. B, Pl.'s Dep. 97:11–100:1, App. 54-59; Pl.'s Dep. Ex. 3, App. 184-188.)  Immediately, he began sending text messages to her cell phone.  (_Id._ 102:8–103:14, App. 58-59.)  To close her first sale with him at DMN, Mr. Lopez insisted that Cunningham send him a photo of her "begging," which she agreed to do despite finding it "weird" and "unprofessional."  (_Id._ 106:20–112:3, App. 60-66.)  Regardless, Cunningham continued to pursue business from Mr. Lopez.

One month into their business relationship at DMN, Mr. Lopez texted Cunningham emojis of eggplants (which she considers to have "phallic connotations") and stated, "It's all yours if you want it."  (Ex. B, Pl.'s Dep. 112:5–123:5, App. 66-77; Pl.'s Dep. Ex. 4, App. 189-195.)  Cunningham testified she considered this inappropriate sexual harassment, but did not tell Mr. Lopez to stop because "[i]t's a new client."  (Ex. B, Pl.'s Dep. 123:4–19, App. 77.)

On one occasion while at DMN, Cunningham got football tickets for Mr. Lopez, and he insisted that he be allowed to sleep at Cunningham's apartment when in town for the game.  (Ex. B, Pl.'s Dep. 123:22–130:1, App. 77-84; Pl.'s Dep. Ex. 5, App. 196-197.)  Again, Cunningham

considered this sexual harassment.  However, she did not fire Mr. Lopez as a client, nor did she block his cell phone number so that he could not call or text.  (Ex. B, Pl.'s Dep. 126:19–130:1, App. 80-84.)  When asked why, Cunningham responded, "[H]e's my biggest-spending account. How can you block your client?"  (*Id.* 128:24–129:8, App. 82-83.)

While at DMN, Cunningham testified that Mr. Lopez pulled his pants down in front of her. (*id.* at 59:10–68:1, App. 24-33) and that Mr. Lopez was "handsy" and touched her inappropriately (*id.* at 68:2–70:10, App. 33-35).  Cunningham testified that one time when she drank too much alcohol at Mr. Lopez's insistence, Mr. Lopez stayed at her apartment, and she woke up the next morning feeling as though she had been "violated" against her will.  (*Id.* 70:11–71:9, App. 35-36.) Cunningham did not call the police about this incident.  When asked why, Cunningham testified, "He was a client, and I had goals for revenue.  And he was a big spender, and I didn't think that I could keep my job [at DMN]."  (*Id.*)  Despite all of these incidents, including an alleged assault, Cunningham never fired Mr. Lopez as a client and continued to work with him until she quit her employment with DMN.  (*Id.* 131:7–15, App. 85.)[9]

After quitting DMN—allegedly due to Mr. Lopez's sexual harassment (*id.* at 55:6–57:1, App. 21-23)[10]—Cunningham continued to text with Mr. Lopez.  (Ex. B, Pl.'s Dep. 132:7–136:23, App. 86-90; *id.* at 140:2–143:14, App. 91-94; Pl.'s Dep. Ex. 6, App. 198-216.)  She even solicited him for business on behalf of her new employer, Elite MD Group.[11]  (Ex. B, Pl.'s Dep. 132:22–135:22, App. 86-89.)  Again, Cunningham did not block Mr. Lopez's number; instead, she continued to text him and solicit his business.  (*Id.* 135:17–136:10, App. 89-90.)  All of this conduct

---

[9] Additional text messages between Cunningham and Mr. Lopez while she was employed at DMN are contained in Defendant's Appendix.  (Ex. C, App.  236-417.)
[10] Cunningham also declined to file suit over her employment at DMN.  (Ex. B, Pl.'s Dep. 59:10–60:4, App. 24-25.)
[11] Cunningham worked at Elite MD Group immediately before working at Advantix.  (Ex. A, Ferreri Decl. Ex. 1, App. 8.)

conclusively demonstrates that, despite his behavior, working with Mr. Lopez to earn sales commissions was not unwelcome to Cunningham.

*Second*, the notion that Cunningham was "forced" to work with Mr. Lopez while at Advantix is completely negated by her own conduct. While quitting her employment with DMN, Mr. Lopez invited Cunningham to use him as a reference for future jobs. (Ex. B, Pl.'s Dep. 143:15–146:21, App. 94-97; Pl.'s Dep. Ex. 6, App. 198-216.) Cunningham accepted that invitation, and then used Mr. Lopez as a reference to gain employment *at Advantix*. (Ex. B, Pl.'s Dep. 157:24–161:22, App. 105-109.) Cunningham cannot voluntarily use Mr. Lopez as a reference to become employed at Advantix and then at the same time claim she was "forced" to work with him.

Further, Cunningham's own words contradict the notion that working with Mr. Lopez at Advantix was unwelcome. While she was negotiating her job offer with Advantix, Cunningham texted Mr. Lopez and told him to hold off on signing a deal with a competitor because she would soon be starting at Advantix. (Ex. B, Pl.'s Dep. 146:22–147:23, App. 97-98; Pl.'s Dep. Ex. 6, App. 210–211.) When discussing her potential job at Advantix, Mr. Lopez texted, "I want the Taylore that would dance, have fun and take me to the bar. . . . I will expect you to arrange a place for me to stay when I visit for meetings." (Ex. B, Pl.'s Dep. 149:14–18, App. 99.) In response, Cunningham says, "I'll be sure to ask them how we can accommodate *my future client* upon signing." (*Id.*) In subsequent messages, Cunningham continues to discuss the prospect of doing business with Mr. Lopez once she starts at Advantix. (*Id.* 152:10–154:2, App. 102-104.) Again, Cunningham's uncontroverted conduct demonstrates that, despite his history of inappropriate behavior, she intended to work with Mr. Lopez at Advantix despite his prior behavior.

*Third*, and finally, Cunningham's conduct confirms that the three instances of alleged client sexual harassment while at Advantix were not unwelcome.  As to the NADA conference, there is no evidence Cunningham refused to meet with Mr. Lopez to introduce him to Ms. Rayhill.  Taken in the context of Cunningham's undisputed conduct above, this shows that meeting with Mr. Lopez at NADA was not unwelcome.  Similarly, as to the alleged Scottsdale incident, Cunningham's text messages demonstrate that *she* affirmatively contacted Mr. Lopez and tried to introduce him to a female friend she described as "cute."  (*See* Pl.'s Dep. Ex. 21, App. 231-235.)  Cunningham testified the reason she did so was to obtain VIP passes for a party in Scottsdale.  (Ex. B, Pl.'s Dep. 268:12–271:12, App. 171-174.)  Again, if Mr. Lopez's conduct was unwelcome, Cunningham would not seek him out in Scottsdale to get VIP party passes for her and a "cute" friend.  Finally, as to the text messages, it is uncontroverted that over a period of years, Mr. Lopez continued to text and call Cunningham and that she never blocked his number or otherwise told him to refrain from contacting her.  Instead, as set forth above, and despite his behavior, Cunningham continued to communicate with Mr. Lopez for her own personal gain (i.e., continuing to sell to him, using him as a reference, etc.).

Based on Cunningham's uncontroverted conduct, no reasonable juror could conclude that the alleged harassment by Mr. Lopez was unwelcome, and the Court should grant summary judgment on her hostile work environment.  *See Holmes*, 304 F. Supp. 3d at 543–546; *Greco*, 2014 U.S. Dist. LEXIS 87782, at *22–30; *Zhao* 2007 U.S. Dist. LEXIS 103253, at *25.[12]

---

[12] For similar reasons, the Court should grant summary judgment on the grounds that the alleged client harassment did not affect a term or condition of Cunningham's employment. *See Holmes*, 304 F. Supp. 3d at 546–547.  As in *Holmes*, there is no evidence that the alleged harassment prevented Cunningham from performing her job, that she was discouraged from continuing to work for Advantix, or that she failed to advance her career because of the harassment.  *See id*.  It is undisputed that Mr. Lopez was an Advantix client for approximately 3 months and that after he terminated his account in May 2017, Cunningham was not written up or otherwise disciplined, and she continued working at Advantix until December 2017 when she was terminated for misconduct and insubordination.  (Ex. B, Pl.'s Dep. 277:16– 278:15, App. 180-181.)  It is also undisputed that Cunningham received raises and eventually secured

### c.     <u>There is no basis to hold Advantix liable for the alleged harassment.</u>

There is also no evidence that Advantix knew or should have known about the alleged harassment by Mr. Lopez yet allowed it to persist.  It is undisputed that: (1) Cunningham used Mr. Lopez as a reference to become employed at Advantix (Ex. B, Pl.'s Dep. 157:24–161:22, App. 105-109); (2) Cunningham did not report the alleged harassment at the NADA convention to any member of Advantix management (*id.* at 273:16–23, App. 176);[13] (3) Cunningham did not report to management she had been sexually harassed in Scottsdale (*id.* at 273:24–274:21, App. 176-177); and (4) Cunningham informed Advantix management that Mr. Lopez was "not as bad as he was" and that he was "a changed man" (*id.* at 275:19–276:11, App. 178-179.) Given these facts, no reasonable juror could conclude that Advantix knew or should have known about the alleged harassment by Mr. Lopez yet allowed it to persist.  The Court should grant summary judgment.

## D.     <u>Equal Pay Act Claim</u>

Along with her pay discrimination claim under Title VII, Cunningham alleges a similar claim under the Equal Pay Act ("EPA").  As with her Title VII claim, the basis of the EPA cause of action is that a male co-worker, Max Williams, was paid $1,000 more in monthly base salary than Cunningham.  (Ex. B, Pl.'s Dep. 186:18–187:23, App. 126-127.)  The Court should grant summary judgment on this claim because it is both time-barred and substantively unsupported.

### 1.     <u>Legal Standard</u>

To establish a prima facie case under the EPA, a plaintiff must show that: (1) her employer is subject to the EPA; (2) she performed work in a position requiring equal skill, effort, and

---

enough sales to become the second highest paid employee in the Company. *See supra* Section II.B–C.  As a matter of law, the alleged client harassment did not affect a term or condition of Cunningham's employment. *See Holmes*, 304 F. Supp. 3d at 546–547.

[13] Cunningham claims she talked with Taylor Owen and Jessi Rayhill about the alleged harassment at the NADA convention. (Ex. B, Pl.'s Dep. 273:16–23, App. 176.)  Ms. Owen and Ms. Rayhill were non-management workers at that time. (Ex. A, Ferreri Decl. ¶ 23, App. 4.)

responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison. *Fields v. Stephen F. Austin State Univ.*, 611 F. App'x 830, 831–32 (5th Cir. 2015) (per curiam). If the plaintiff establishes a prima facie case, then the burden shifts to the employer to prove some neutral factor that explains the difference in pay. The EPA provides four ways to show the pay differential is not discriminatory, one of which is "a differential based on *any other factor* other than sex." 29 U.S.C. § 206(d) (emphasis added); *see Westrich-James v. Dall. Morning News, Inc.*, No. 3:07-cv-1329-G, 2012 U.S. Dist. LEXIS 132368, at *12–13 (N.D. Tex. Sept. 17, 2012) (Fish, J.). If the employer establishes any of these grounds, the plaintiff then must show that the ground offered is simply a pretext for sex discrimination. *Phillips v. TXU Corp.*, 194 F. App'x 221, 224 (5th Cir. 2006).

### 2.   The EPA claim is barred by the statute of limitations because there is no evidence that Advantix's alleged violation of the EPA was "willful."

Claims under the EPA generally must be filed within two years after the cause of action accrues. However, the limitations period is three years if the plaintiff can establish a "willful" violation of the EPA. *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009). As shown above, November 2016 was the last time Cunningham was affected by the allegedly discriminatory pay differential between her and Mr. Williams. *See supra* Section III.A.2. Because Cunningham did not file this suit until January 25, 2019 (*see* Pl.'s Compl., Doc. 1), her EPA claim is time-barred unless she can establish that Advantix willfully violated EPA. *See Ikossi-Anastasiou*, 579 F.3d at 552.

An employer willfully violates the EPA if it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "Evidence that a defendant was merely negligent

regarding [EPA] requirements is insufficient to show willfulness." *Dacar v. Saybolt, L.P.*, 914 F.3d 917 (5th Cir. 2018).

Here, Cunningham has not even clearly *alleged* that Advantix willfully violated the EPA. (*See* Pl.'s Compl., Doc. 1, ¶¶ 58–66.)  Summary judgment is appropriate for this reason alone. Further, even if Cunningham has alleged a willful violation of the EPA, there is no evidence to support that allegation.  Nothing suggests Advantix actually knew that the salary differential between Cunningham and Mr. Williams violated the EPA.  Without any such evidence, Cunningham cannot show the possibility of a willful violation, and her EPA claim is barred by the applicable two-year limitation period.  *See Ikossi-Anastasiou*, 579 F.3d at 552–53 (affirming summary judgment on limitations grounds where plaintiff failed to produce evidence that defendant willfully violated the EPA); *see also Steele v. Leasing Enters.*, 826 F.3d 237, 248 (5th Cir. 2016) (affirming district court's application of two-year statute of limitations where plaintiff did not provide sufficient proof of willful violation of FLSA).

       **3.**       <u>**The alleged pay differential was based on a factor other than sex.**</u>

Assuming for purposes of argument that Cunningham's claim is timely and that she can establish a prima facie case under the EPA, the Court should still grant summary judgment because the salary differential was based on legitimate factors other than sex.  Those factors are the same as those described above with respect to Cunningham's Title VII claim.

*First*, Cunningham's base salary was lower than Mr. Williams because she herself *requested* a lower salary.  As set forth above, when negotiating her compensation package with Advantix, Cunningham *knew* that Mr. Williams had been offered a base salary of $85,000 (Ex. B, Pl.'s Dep. 167:2–7, App. 115), yet her recruiter initially proposed a base salary of $75,000.  (Ferreri Decl. Ex. 1, App. 6-10.)  Cunningham's initial request for a salary lower than that of her alleged

comparator is a legitimate factor "other than sex" that justifies the salary differential.  It is illogical that Advantix should be liable under the EPA when Cunningham voluntarily proposed a salary that she *knew* was less than a recently hired male employee.

        *Second*, the salary differential was due to separate salary negotiations by the recruiting firm representing Mr. Williams and Cunningham.  *See supra* Section III.B.  This too is a legitimate factor other than sex.  *See Reznick v. Associated Orthopedics & Sports Med., P.A.*, 104 F. App'x 387, 391–92 (5th Cir. 2004) (holding that salary differential resulting from compensation negotiations and fact that comparator had competing job offer were legitimate factors "other than sex" under the EPA); *McHenry v. One Beacon Ins. Co.*, No. 03-CV-4916, 2005 U.S. Dist. LEXIS 46573, at *36–38 (E.D.N.Y. Aug. 29, 2005) (same).

        *Third*, the salary differential was due to other legitimate business reasons.  Mr. Williams was hired first to fill the vacant account manager position.  Despite Advantix's concern that it lacked the resources to hire a second account manager, Cunningham and her recruiter convinced the company to hire Cunningham because they said she would generate enough business to economically justify a second account manager.  Based on these business circumstances, the parties agreed to a compensation package that had a lower base salary (which was necessary because Advantix questioned whether it could even afford a second account manager) but a higher sales commission potential (which would incentive Cunningham to make sales and justify her position).  Business circumstances like these are also a legitimate factor other than sex under the EPA.  *See Lauderdale v. Ill. Dep't of Human Servs.*, 876 F.3d 904, 909 (7th Cir. 2017) (holding that budget concerns were a factor other than sex that justified salary differential under EPA); *Wiley v. Am. Elec. Power Serv. Corp.*, 287 F. App'x 335, 341 (5th Cir. 2008) (holding that pay differential was appropriate under EPA's factor-other-than-sex exception because it was based on

a variety of business considerations, including an employee's "long-term value for business and profitability" and "competing opportunities"); *Wymola v. Tex. A&M Univ.*, No. 00-21001, 2002 U.S. App. LEXIS 29243, at *3 n.3 (5th Cir. Apr. 10, 2002) (noting that "factors other than sex under Equal Pay Act include . . . special exigent circumstances connected to the business") (quoting *Lenihan v. Boeing Co.*, 994 F. Supp. 776, 778 (S.D. Tex. 1998)).

Cunningham has no evidence disputing any of these legitimate factors or showing that they are a pretext for sex discrimination.  The Court should grant summary judgment on Plaintiff's EPA claim.  *See Reznick*, 104 F. App'x at 392 (affirming summary judgment where plaintiff offered "no evidence to raise a genuine issue of material fact regarding the legitimacy of these defenses").

## E.   FLSA Misclassification Claim

Even though she was the second highest paid employee in the company (making well over six figures), Cunningham alleges she was actually a non-exempt employee under the FLSA and, therefore, Advantix owes her additional overtime pay.  (Pl.'s Compl., Doc. 1, ¶¶ 68–75.)  The Court should grant summary judgment on this claim because the undisputed evidence—consisting largely of Cunningham's own deposition testimony—conclusively proves that Cunningham was exempt under the FLSA's administrative, outside sales, and highly compensated employee ("HCE") exemptions.

### 1.   Legal Standard

Under the FLSA, an employer must pay overtime compensation to its non-exempt employees who work more than forty hours a week.  29 U.S.C. § 207(a)(1); *Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004).  However, this overtime requirement does not apply to certain "exempt" categories of employees.  *See* 29 U.S.C. §§ 207, 213.  As is relevant here, an employer is *not* required to pay overtime to statutorily defined: (1) administrative employees; (2)

outside sales employees; and (3) highly compensated employees.  *See* 29 U.S.C § 213(a)(1); 29 C.F.R. § 541.601 (HCE exemption).

Whether an employee is exempt under the FLSA is question of law.  *Faludi v. U.S. Shale Sols., L.L.C.*, 936 F.3d 215, 2019 U.S. App. LEXIS 249365, at \*6 (5th Cir. Aug. 21, 2019).  The employer bears the burden of establishing that an exemption applies by the preponderance of the evidence.  *Id.* While it has always been the case that the employer must prove the exemption, a recent decision from the United States Supreme Court significantly lowered the bar for an employer to do so.

Historically, courts held that the "remedial" nature of the FLSA required that exemptions be "narrowly construed" against the employer.  *See, e.g.*, *Tullous v. Tex. Aquaculture Processing Co., LLC*, 579 F. Supp. 2d 811, 817 (S.D. Tex. 2008) (denying summary judgment to employer and noting that "exemptions are to be narrowly construed against the employer seeking to assert them").  In the recent case of *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018), the United States Supreme Court bluntly stated that is not correct.  There, the Court noted, "Because the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, 'there is no reason to give [them] anything other than a fair (rather than a 'narrow') interpretation.'" *Id.* at 1142 (quoting A. Scalia & B. Garner, *Reading Law*, at 363 (2012)).  Instead, because "exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement," courts "have no license to give the exemption[s] anything but a *fair reading*."  *Id.* (emphasis added).

Thus, after *Encino Motorcars*, courts must apply FLSA exemptions where the text of the statute fairly requires it.  Heeding the Supreme Court's instruction, the Fifth Circuit has repeatedly found that a "fair reading" of an FLSA exemption compelled summary judgment in favor of employers.  *See, e.g.*, *Faludi v. U.S. Shale Sols., L.L.C.*, 936 F.3d 215, 2019 U.S. App. LEXIS

249365 (5th Cir. Aug. 21, 2019); *Rychorcewicz v. Welltec, Inc.*, 768 F. App'x 252 (5th Cir. 2019); *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575 (5th Cir. 2018).

In this case, a fair reading of the relevant statutory provisions shows that Cunningham was exempt under the administrative, outside sales, and highly compensated employee exemptions.

**2.      Cunningham is exempt under the administrative and outside sales exemptions.**

An exempt administrative employee is one: (1) compensated on a salary or fee basis at a rate of not less than $455 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200.

The outside sales exemption covers any employee whose primary duty is making sales or obtaining orders or contracts and who is customarily and regularly engaged away from the employer's place of business in performing such primary duty.  29 C.F.R. § 541.500(a). "The logic of this exemption is that . . . [a]n outside salesman's extra compensation comes in the form of commissions, not overtime, and because most of the salesman's work is performed away from the employer's place of business, the employer often has no way of knowing how many hours an outside salesman works."  *Meza v. Intelligent Mexican Mktg.*, 720 F.3d 577, 581 (5th Cir. 2013) (quoting *Jewel Tea Co. v. Williams*, 118 F.2d 202, 207–08 (10th Cir. 1941)).

As set forth below, Cunningham's deposition testimony conclusively establishes she was independently exempt under the administrative or outside sales exemption. Alternatively, Cunningham was exempt under a combination of those two exemptions.  *See* 29 C.F.R. § 541.708 ("Employees who perform a combination of exempt duties as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees may qualify

for exemption. Thus, for example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption."); *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 631–32 (7th Cir. 2010) (finding sales employee was exempt because she performed a combination of exempt outside sales and administrative duties). As set forth below, Advantix establishes that each exemption (alone or together) applies.

        **a.**        <u>**At all times, Cunningham was paid a regular salary of at least $72,000.**</u>

To establish the administrative exemption, Cunningham must have been compensated on a salary or fee basis at a rate of at least $455 per week ($23,660 annually). This element is met. It is undisputed that, at all times she worked for the company, Advantix paid Cunningham an annual salary of at least $72,000.00, which was paid regularly in equal installments. *See supra* Section II.B–C. This satisfies the requirement of the administrative exemption that Cunningham be compensated on a salary basis at a rate of at least $455 per week. *See* 29 C.F.R. § 541.602(a) (defining the "salary basis" requirement).

        **b.**        <u>**Cunningham performed exempt administrative work.**</u>

Exempt administrative work is "office or non-manual work directly related to the management or general business operations of the employer <u>or</u> the employer's customers." 29 C.F.R. § 541.200 (emphasis added). Here, Cunningham performed work directly related to management and general business operations of both Advantix and Advantix's customers. This is clear from the various examples of administrative work provided by the DOL's regulatory guidance.

The FLSA regulations provide that "[w]ork directly related to management or general business operations includes, but is not limited to, work in functional areas such as budgeting; auditing; quality control; advertising; marketing; research; and similar activities" 29 C.F.R.

§ 541.201(b) (irrelevant examples excluded).   In her deposition, Cunningham admitted she performed these exempt duties, including:

- preparing budgets for clients (Ex. B, Pl.'s Dep. 214:20–215, App. 135-136);

- auditing and performing quality control checks to confirm services requested by the client were being provided by Advantix (Ex. B, Pl.'s Dep. 219:9–21, App. 140);

- performing data analysis and research regarding a client's needs and then preparing sales and operations strategies to address those needs. (Ex. B, Pl.'s Dep. 74:12–75:5, App. 38-39; *id.* at 214:20–215:20, App. 135-136);

- conceptualizing, building, and managing advertising and marketing campaigns (Ex. B, Pl.'s Dep. 219:8–18, App. 140; *id.* at 220:10–221:21, App. 141-142; *id.* at 222:2–223:5, App. 143-144);

- creating advertisements (Ex. B, Pl.'s Dep. 221:22–222:1, App. 142-143); and

- reporting results to clients. (Ex. B, Pl.'s Dep. 220:1–9, App. 141.)

The FLSA regulations further provide: "An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt."   29 C.F.R. § 541.201(c).   The evidence conclusively establishes that Cunningham served as an exempt advertising and marketing consultant to Advantix's clients.

Cunningham testified that her job required her to use "consultative selling" skills.  (Ex. B, Pl.'s Dep. 74:12–75:1, App. 38-39; *id.* at 214:20–215:9, App. 135-136.)  In her own words, she described "consultative selling" as follows:   "Where you're not just selling a product; you're *consulting* with the client on their needs and then having more of a solution-based service."  (*Id.* at 74:12–15, App. 38) (emphasis added).  In addition to consultative selling, Cunningham testified

she provided other consulting-type services to Advantix's clients, including creating key word searches and branding strategies.  (*Id.* at 222:2–223:5, App. 143-144.)

Even under the pre-*Encino Motorcars* narrow-construction standard, many courts found consultative salespersons like Cunningham to be exempt administrative employees.  *See, e.g.*, *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560 (7th Cir. 2012) (finding pharmaceutical sales representatives to be exempt administrative employees);  *Hines v. State Room, Inc.*, 665 F.3d 235 (1st Cir. 2011) (finding that sales manager was exempt administrative employee because the salesperson's job was to identify customer needs and then create and manage custom events based on those needs); *Swartz v. Windstream Commc'ns, Inc.*, 429 F. App'x 102, 105 (3d Cir. 2011) (holding that sales engineer was exempt administrative employee because he assisted sales process by delivering custom solutions based on client needs); *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir. 1997) (finding marketing representatives who consulted with the company's clients regarding their insurance needs to be exempt administrative employees); *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 472–77 (S.D.N.Y. 2008) (finding pharmaceutical sales representatives were exempt administrative employees because they tailored sales presentations based on needs of physicians that they uncovered through data analysis).

The regulations provide yet another example of exempt administrative duties that Cunningham performed: "An employee who leads a team of other employees assigned to complete major projects for the employer (such as purchasing, selling or closing all or part of the business, negotiating a real estate transaction or a collective bargaining agreement, or designing and implementing productivity improvements) generally meets the duties requirements for the administrative exemption, even if the employee does not have direct supervisory responsibility over the other employees on the team."  29 C.F.R. § 541.203(c).

Cunningham testified that she had account management duties in which directed the operations team on how Advantix would provide the digital advertising services requested by the client.   (Ex. B, Pl.'s Dep. 219:8–223:5, App. 140-144.)   Specifically, Cunningham would determine the needs of the client, figure out the services required to meet those needs, and then relay what needed to be done to the operations team.   (*Id.* at 220:11–221:15, App. 141-142.) Account management duties like those Cunningham admits she performed are exempt administrative duties.  *See, e.g.*, *Verkuilen v. MediaBank, LLC*, 646 F.3d 979, 980 (7th Cir. 2011) (holding that account manager was exempt administrative employee because "she acted as bridge between the software developers and the customers, helping them to determine the customers' needs, then relaying those needs to the developers and so assisting in the customization of the software, and finally helping the customers use the customized software"); *Cash v. Craft Cycle Co.*, 508 F.3d 680, 682 (1st Cir. 2007) (finding that customers relations manager whose duties included ensuring that custom motorcycles were crafted to customers' expectations was an exempt administrative employee).

Under any reading of the exemption—especially a fair one—Cunningham's testimony conclusively establishes she regularly performed exempt administrative duties while employed at Advantix.

### c.    Cunningham exercised discretion and independent judgment with respect to matters of significance.

The administrative exemption also requires that the employee exercise discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200.  "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  *Id.* § 541.202(a).  "[T]he term 'matters of significance" refers to the level of

importance or consequence of the work performed." *Id.* Here, Cunningham performed important work on behalf of Advantix that involved decisions about the best path forward among a series of choices with minimal oversight.

The FLSA regulations provide factors to assess whether an employee exercises discretion and independent judgment with respect to matters of significance. Two factors are whether the employee carries out major assignments in conducting the operations of the business and whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business. *Id.* § 541.202(b). Cunningham performed such tasks. Using "consultative selling" techniques and other data analysis, Cunningham was responsible for devising client pitches and sales strategies. (Ex. B, Pl.'s Dep. 214:20–215:21, App. 135-136.) Half of the time, Cunningham was not even required to obtain approval for her client pitches; instead, she was free to use her own skills and judgment. (*Id.* at 215:22–216:23, App. 136-137.) Client development is a major project for Advantix because it drives revenue. (Ex. A, Ferreri Decl. ¶ 5, App. 2.)

Similarly, Cunningham performed account management duties. (Ex. B, Pl.'s Dep. 219:8–223:5, App. 140-144.) When not in the field selling, Cunningham typically worked at home with minimal oversight. (Ex. A, Ferreri Decl. ¶ 11, App. 2; Pl.'s Dep. 210:25–211:24, App. 132-133.) In her deposition, Cunningham confirmed that she herself was primarily responsible for account management duties and was frustrated that no one was available to assist her. (Ex. B, Pl.'s Dep. 187:24–188:12, App. 127-128; *id.* at 201:24–202:17, App. 129-130; *id.* at 203:12–204:5, App. 131-132.) Account management is a major project for Advantix because it is important to maintain client satisfaction with Advantix's services. (Ex. A, Ferreri Decl. ¶ 5, App. 2.)

Another factor is whether the employee has authority to negotiate and bind the company on significant matters. 29 C.F.R. § 541.202(b). Cunningham testified that part of her sales duties was to negotiate back and forth with clients. (Ex. B, Pl.'s Dep. 214:20–215:2, App. 135-136.)

The FLSA regulations also consider whether the employee provides consultation or expert advice to management. 29 C.F.R. § 541.202(b). As explained above, Cunningham provided a variety of consulting services. She also determined and then instructed others on the means and methods by which Advantix would operationally achieve the client's needs. (Ex. B, Pl.'s Dep. 219:8–223:5, App. 140-144.)

In short, and as she described herself, the essence of Cunningham's job was to use her skill and judgment to figure out what services would best solve the client's problems, implement an operational plan to implement those solutions, and then manage that solution. This necessarily involves considering different courses of action and the best path forward. The only conclusion that can be drawn is that Cunningham exercised discretion and independent judgment with respect to matters of significance. *See Hines*, 665 F.3d at 245–46 (holding that sales managers exercised discretion and independent judgment with respect to matters of significance because they had a primary duty of "engaging potential clients and assisting them in selecting from the employers' offerings"); *Cash*, 508 F.3d at 686 (same); *John Alden*, 126 F.3d at 4 (same).

### d.   Cunningham performed exempt outside sales work.

The outside sales exemption requires that the employee's primary duty be obtaining orders or contracts for services while customarily and regularly engaged away from the employer's place of business. 29 C.F.R. 541.500(a)(1)–(2). It is undisputed that Cunningham performed this work.

Cunningham testified that she was "hired to sell" and that selling Advantix's advertising services was one of her duties. (Ex. B, Pl.'s Dep. 213:22–214:16, App. 134-135.) She further

acknowledged that, as part of her selling duties, she was "out in the field visiting clients all the time." (*Id.* at 217:21–218:10, App. 138-139.) Cunningham was in the office only two to three days a week for varying periods of time. (*Id.* at 210:25–211:24, App. 132-133.) During client visits, Cunningham would go over reporting, try to maintain business, and do whatever the client needed. (*Id.* at 217:21–218:10, App. 138-139.) Cunningham also spent significant time in outside networking activities as part of her sales duties. (Ex. B, Pl.'s Dep. 214:20–24, App. 135; *id.* at 216:24–217:17, App. 137-138.) Cunningham testified that, in total, "I spent about 30 hours a week doing *outside sales*, networking and being on appointments and stuff." (*Id.* at 218:11–18, App. 139) (emphasis added).

Cunningham's deposition testimony conclusively establishes that she performed exempt outside sales work while customarily and regularly engaged away from Advantix's place of business. *See* 29 C.F.R. § 541.500 (noting that exempt outside sales work includes "work performed incidental to and in conjunction with the employee's own outside sales or solicitations" and "work that furthers the employee's sales efforts also shall be regarded as exempt work"); *id.* § 541.701 ("Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek . . . ."); *see also Hall v. Haworth, Inc.*, No. H-12-1776, 2014 U.S. Dist. LEXIS 192180, at *19, 25 (S.D. Tex. Apr. 3, 2014) (finding that sales person customarily and regularly performed exempt outside sales work where employees spent approximately 40% of working hours on outside sales activities and "regularly" networked with business referral sources).

### e.   Cunningham's primary duties were exempt work.

To establish the applicability of either the administrative or outside sales exemption, Advantix must prove that the applicable exempt duties were Cunningham's "primary duty." The

term "primary duty" means "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." *Id.* § 541.700(b). However, "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id.*

As set forth above, Cunningham's deposition testimony conclusively establishes that exempt outside sales and administrative duties were each, independently, a "primary duty." As to the outside sales exemption, Cunningham testified she was "hired to sell." (Ex. B, Pl.'s Dep. 213:22–214:16, App. 134-135.)   It is undisputed that generating business was one of Cunningham's principal duties. (Ex. A, Ferreri Decl. ¶ 4, App. 1.) Further, out of her self-estimated 50 to 70 hour workweek, Cunningham generally spent 30 hours a week on outside sales activities. (Ex. B, Pl.'s Dep. 218:11–22, App. 139.) The relative importance of these outside sales activities and the amount of time Cunningham spent on them establishes that outsides sales was itself a "primary duty." *See* 29 C.F.R. § 541.700(a)–(b). As such, Cunningham was an exempt outside sales employee.

Similarly, Cunningham's exempt administrative duties (i.e., account management and consultative selling) were also a "primary duty." Both account management and business generation were major and primary duties that Cunningham held. (Ex. A, Ferreri Decl. ¶ 4, App.

1.)  Cunningham testified that she spent "over 30 hours a week on account management stuff." (Pl's Dep. 218:11–18, App. 139.)  The relative importance of these administrative duties and the amount of time Cunningham spent on them establishes they were a "primary duty."  *See* 29 C.F.R. § 541.700(a)–(b).

Finally, and alternatively, even if neither the administrative nor outside sales duties independently constitute a "primary duty," then in combination they do.  Under the FLSA regulations, categories of exempt duties can be combined to establish that an employee's "primary duty" was exempt work:  "Employees who perform a combination of exempt duties as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees may qualify for exemption. Thus, for example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption."  29 C.F.R. § 541.708.

Here, Cunningham testified that the amount of time she spent on outside sales activities (which are exempt duties) and on account management tasks (also exempt) was split nearly 50/50. (Ex. B, Pl.'s Dep. 218:11–18, App. 139.)  Combined, that means Cunningham was performing exempt duties 100% of the time, and therefore, she is exempt under a combination of the administrative and outside sales exemptions.  *See Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 631–32 (7th Cir. 2010) (finding sales employee was exempt because she performed a combination of exempt outside sales and administrative duties).

### 3.   Beginning in 2017, Cunningham was exempt under the highly compensated employee exemption.

In addition to being exempt under the administrative and outside sales exemptions, Cunningham was also exempt under the highly compensated employee exemption (the "HCE exemption") beginning in 2017.

Under the HCE exemption, an employee is exempt from the FLSA's overtime requirements if (1) she receives "total annual compensation of at least $100,000"; and (2) she "customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee[.]" Highly Compensated Employees, 69 Fed. Reg. 22,122, 22,269 (April 23, 2004).[14]

With respect to the first element, "'Total annual compensation' must include at least $455 per week paid on a salary or fee basis." 69 Fed. Reg. at 22,269. "Total annual compensation" also includes "commissions, nondiscretionary bonuses and other nondiscretionary compensation." *Id.* Here, it is undisputed that Cunningham had "total annual compensation" of at least $100,000.00 during calendar year 2017.

In calendar year 2017, Advantix paid Cunningham an annual of salary of $84,000.00, which was paid regularly in equal installments. (Ex. B, Pl.'s Dep. Ex. 12, App. 221-224.) This satisfies the requirement of the HCE exemption that Cunningham be compensated on a salary basis at a rate of not less than $455 per week. *See* 29 C.F.R. § 541.602(a) (defining the "salary basis"

---

[14] In 2016, the Department of Labor proposed amending the salary threshold for application of the HCE exemption to $134,004.00. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 81 Fed. Reg. 32,391, at 32,550 (May 23, 2016) (the "Final Rule"). The Final Rule was set to become effective on December 31, 2016, *see id.* at 32,391, which was during the period of Cunningham's employment at Advantix.

However, on November 22, 2016, Judge Mazzant of the Eastern District of Texas issued a nationwide injunction enjoining the implementation of the Final Rule, which remains effective as of the date of this Motion. *See Nevada v. Dep't of Labor*, 218 F. Supp. 2d 520 (E.D. Tex. 2016). Since then, the DOL has proposed new amendments to the HCE salary threshold; however, these rules will not become effective until January 1, 2020. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 84 Fed. Reg. 51230 (Sept. 27, 2019) (to be codified at 29 C.F.R. Part 541).

Because the DOL's 2016 Final Rule amending the HCE salary threshold was enjoined nationwide, the applicable salary threshold in this case is the amount stated in the prior version of the regulation: $100,000.00. *See Bocage v. M-I, L.L.C.*, No. 17-6124, 2019 WL 4305812, 2019 U.S. Dist. LEXIS 154607, at *5 n.12 (E.D. La. Sept. 11, 2019) (applying $100,000 salary threshold to HCE exemption claim); *see also* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2019-8 (July 1, 2019) (stating that DOL will continue to enforce HCE salary threshold of $100,000).

---

requirement).  Cunningham also received a monthly commission equal to 20% of gross profits that exceeded $9,000 per month.  (Ex. B, Pl.'s Dep. Ex. 9, App. 217.)  In 2017, this compensation package resulted in Cunningham earning a total of $126,040.39 from her employment at Advantix. (Ex. B, Pl.'s Dep. 185:6–19, App. 125; Pl.'s Dep. Ex. 12, App. 221-224.)  This meets the salary requirement of the HCE exemption.

The second element of the HCE exemption requires that the employee customarily and regularly perform any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee. 69 Fed. Reg. at 22,269.  "The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant."  29 C.F.R. § 541.701.  Here, for the reasons described in Sections III.E.2.b-e of this Brief, Cunningham customarily and regularly performed exempt administrative and outside sales employee duties.

Both elements are met, and the evidence conclusively establishes that the HCE exemption applied to Cunningham beginning in calendar year 2017.

### 4.    Cunningham's FLSA claims are subject to a two-year statute of limitations.

FLSA actions are generally governed by a two-year statute of limitations.  However, the limitation period is three years if the defendant is found to have willfully violated the FLSA. 29 U.S.C. § 255(a).  A claim under the FLSA "accrues anew with each paycheck." *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S.Ct. 2162, 2186 n. 8 (2007)  Cunningham did not file this lawsuit until January 25, 2019.  (*See* Pl.'s Compl., Doc. 1.)  Thus, any FLSA claim arising from a paycheck prior to January 25, 2017 is time-barred unless Cunningham can establish Advantix willfully violated the FLSA.

To show willfulness, a plaintiff must demonstrate that an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Steele v. Leasing Enters.*, 826 F.3d 237, 248 (5th Cir. 2016) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-34 (1988)).   "A negligent violation is not a willful violation, and an unreasonable violation does not 'necessarily constitute a willful violation.'"   *Id.* (quoting *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990)).

Here, as with her EPA claim, Cunningham can produce no evidence that Advantix actually knew it committed any violation of the FLSA.  Without any such evidence, Cunningham cannot demonstrate willfulness, and her FLSA claims are subject to a two-year limitation period.  *See Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009) (affirming summary judgment on limitations grounds where plaintiff failed to produce evidence that defendant willfully violated the FLSA); *see also Steele*, 826 F.3d at 248 (affirming district court's application of two-year statute of limitations where plaintiff did not provide sufficient proof of willful violation of FLSA).  The Court should enter summary judgment that any FLSA claim arising from a paycheck prior to January 25, 2017 is time-barred.[15]

## IV.   <u>CONCLUSION</u>

For these reasons, Defendant Advantix Digital, LLC respectfully requests that the Court grant summary judgment on all claims asserted by Plaintiff Taylore Cunningham and dismiss this case with prejudice.

---

[15] As established above, beginning in 2017, Cunningham was exempt under the HCE exemption.  *See supra* Section III.E.3.  Thus, even if the Court does not hold that Cunningham was exempt during the entirety of her employment under the administrative or outside sales exemption, the Court should still enter summary judgment on all FLSA claims on the basis that: (i) Cunningham was exempt under the HCE exemption beginning in January 2017; and (ii) any FLSA claim arising from a paycheck prior to January 25, 2017 is time-barred.

Respectfully submitted,

**JACKSON WALKER LLP**


By:/s/ *David R. Schlottman*                            _
     Ashley Scheer
     State Bar No. 00784320
     David Schlottman
     State Bar No. 24083807
     2323 Ross Avenue, Suite 600
     Dallas, Texas 75201
     (214) 953-6000
     (214) 953-5822 – Fax
     Email:  ascheer@jw.com

ATTORNEYS FOR DEFENDANT
ADVANTIX DIGITAL, LLC



## CERTIFICATE OF SERVICE

This is to certify that on this 28th day of October, 2019, a true and correct copy of the foregoing document was served via cm/ecf upon:

Tailim Song
Tailim Song Law Firm
8111 LBJ Freeway, Suite 480
Dallas, Texas 75251

            /s/ *David R. Schlottman*                     
            David Schlottman