UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TAYLORE CUNNINGHAM, )
)
       Plaintiff, )
)
VS. )         CIVIL ACTION NO.
)
ADVANTIX DIGITAL, LLC F/K/A )        3:19-CV-0210-G
ADVANTIX INTERNET MARKETING, )
LLC, )
)
       Defendant. )

## MEMORANDUM OPINION AND ORDER

Before the court are the defendant's motion for summary judgment (docket entry 21) and the defendant's objections to plaintiff's summary judgment evidence ("Objections") (docket entry 56).  For the reasons set forth below, the defendant's motion for summary judgment is **GRANTED**, and the defendant's objections are **DENIED** as moot.

## I.  BACKGROUND

### A.  Factual Background

The plaintiff Taylore Cunningham ("Cunningham") was hired as an account manager by the defendant Advantix Digital, LLC ("Advantix") in February or March of 2016, and began working at Advantix on approximately March 9, 2016. Defendant's Brief in Support of Motion for Summary Judgment ("Motion") (docket

entry 22) at 2-4.  Advantix "provides on-line marketing and consulting services.  The company assists clients with on-line advertising strategies and services, including social-media presence, paid-search advertising [], search-engine optimization, online reputation management, and additional related services."  *Id.* at 1.  Advantix's senior management is comprised of Peter Handy ("Handy"), Ed Ferreri ("Ferreri"), and Amine Bentahar ("Bentahar").  *Id.* at 1-2.

In February, 2016, before Cunningham was hired, Advantix engaged the recruiting firm Xtreme Consulting ("Xtreme") to assist Advantix in hiring a new account manager.  *Id.* at 2.  Xtreme referred Max Williams ("Williams") to Advantix. *Id.*  Advantix offered Williams the job of account manager and Williams accepted. *Id.* at 3.  Williams's compensation package included "an annual base salary of $85,000 and a monthly commission opportunity of $20% of his accounts' monthly gross profit that exceeded $10,000."  *Id.* at 2-3.  Williams worked at Advantix until November of 2016.  Plaintiff's Supplemental Brief in Opposition of Defendant's Motion for Summary Judgment ("Supplemental Response") (docket entry 62) at 17.

Shortly after Advantix hired Williams, Xtreme sent an unsolicited email referral to Advantix, proposing that Advantix hire Cunningham as well.  Motion at 3. Near the bottom of this email appear the words: "$75K base."  Appendix in Support of Defendant's Brief in Support of Motion for Summary Judgment (" Defendant's Appendix") (docket entry 23) at APP. 6.  Advantix was initially hesitant to hire Cunningham as an account manager because the company had just hired Williams. Motion at 3.  However, after negotiating Cunningham's compensation package with

Xtreme, Advantix agreed to hire Cunningham, and Cunningham "agreed [to] a compensation package with a $72,000 base salary and a monthly commission opportunity of 20% of [Cunningham's] accounts' monthly gross profit that exceeded $9,000." *Id.* at 4.  After Cunningham was hired, someone at Xtreme told Cunningham that the reason that Cunningham "was given a lower starting pay than Max Williams" was that "[Williams] had a family and that Advantix thought he deserved the higher pay."  Appendix in Support of Plaintiff's Supplemental Brief in Opposition of Defendant's Motion for Summary Judgment ("Plaintiff's Supplemental Appendix") (docket entry 63) at APP. 44; Supplemental Response at 6.

> The general duties of an account manager [at Advantix] are to generate and manage new client accounts.  Managing client accounts requires the account manager to oversee all aspects of an account, which includes, among other things, relationship management, performance reporting, identifying client needs, proposing solutions, and interfacing with the Advantix operations team to ensure that processes are in place to deliver services promised to a client.  The account manager's business generation duties require the employee to be out of the office and meeting with current or prospective clients to negotiate and secure new contracts for services.

Motion at 2.  Advantix asserts that Cunningham performed these duties while working at Advantix.  *Id.* at 4.  Cunningham "was permitted to work from home or away from the office, and she frequently did so.  The only time Cunningham was required to be in the office was for weekly status meetings."  *Id.*

In the summer of 2016, Cunningham began to approach members of Advantix's senior management—namely Handy, Bentahar, and Ferreri—to address

the fact that Williams was getting paid $1,000 more per month than Cunningham was. *See* Defendant's Appendix at APP. 116, 122. Advantix then raised Cunningham's monthly base salary, on a temporary basis, by $1,000, effective October 2016. Motion at 4. Cunningham's annual base salary thus increased from $72,000 to $84,000, and the raise became permanent in January 2017. *Id.* at 5. In 2017, Cunningham's total compensation (including commissions) was $126,040.39, and for the period between March 2017 and December 2017, Cunningham was the second highest paid employee at Advantix. *Id.*

Advantix terminated Cunningham effective either December 15, 2017, *Id.*, or December 18, 2017, Supplemental Response at 7. The decision to terminate Cunningham was made collectively by Handy, Ferreri, and Bentahar. Motion at 5. The parties dispute the reasons for Cunningham's termination.

Advantix asserts that Cunningham was terminated for a combination of misconduct and insubordination. *Id.* According to the declaration of Ferreri, "[t]hroughout her employment, Cunningham treated coworkers and management in a condescending and demeaning manner[,]" and "Advantix persistently received complaints from Cunningham's coworkers that she had been rude or inconsiderate." Defendant's Appendix at APP. 3. Additionally, according to Ferreri, "many coworkers informed Advantix management they would not work with [Cunningham]." *Id.*

Furthermore, Advantix asserts that "Cunningham viewed herself as an independent business and . . . felt she was not required to observe instructions from

management." Motion at 6. Specifically, in one instance, Cunningham told "Advantix management that any communications and work instructions to" Taylor Owen "'needed' to go through [Cunningham]." *Id.*; Defendant's Appendix at APP. 4. Although Owen's job as an account manager required her to report to Cunningham, Owen did not report exclusively to Cunningham. Motion at 6; Defendant's Appendix at APP. 4. Additionally, at some point before December 2017, Cunningham indicated to Advantix management that she would like to become an independent contractor and continue to work with Advantix in that capacity, rather than as an employee. Motion at 6.

Then, on December 7, 2017, several communications between Cunningham and Advantix management occurred which, according to Advantix, prompted the company to terminate Cunningham. First, on the morning of December 7, 2017, Advantix's Director of Performance Marketing Sinead Hultman sent an email to Cunningham and others in which Hultman stated that an Advantix employee named Jayson would begin to service a particular account, of which Cunningham was the "Account Director." Defendant's Appendix at APP. 225-226; *see* Motion at 6-7. In response, Cunningham stated: "As Account Director and the only one with the relationship with the client, I am making the executive decision to keep this account assigned to" a different Advantix employee. Defendant's Appendix at APP. 225. At the time that this email exchange occurred, Cunningham was unaware that Hultman had the authority to make staffing decisions on particular accounts. *Id.* at APP. 149-

50.  Cunningham, however, did not have the authority to dictate terms to Hultman, who was a director-level manager.  Motion at 7.

In a second exchange between Cunningham and Advantix management on December 7, 2017, Cunningham sent her supervisor John Bailey a text message in which Cunningham stated that she had "retracted all contracts" until the "hierarchy of [her] accounts" was understood.  Defendant's Appendix at APP. 227.  Cunningham stated in her deposition that by this text message, she meant that "[c]ontracts had been sent back to [her] for revision, and [she] wasn't going to press the client until [she] was confident in how that would be handled."  *Id.* at APP. 153.  Bailey responded to Cunningham's text message stating: "I can't help you unless I have a contract signed."  *Id.* at APP. 228.  To this, Cunningham replied:

> I can't in good faith send that contract out knowing there's a chance it won't be handled to my liking.  Honestly I think you [Bentahar] and I need to have a meeting about me going 1099 [(*i.e.*, independent contractor)] b[ecause] I am not willing to lose another account and relationship due to insubordination or lack of performance and results.  I'm at the point where I need autonomy when it comes to my money otherwise I'm not doing it.  Hope you understand.

*Id.*; *see id.* at APP. 156 (clarifying that "going 1099" refers to becoming an independent contractor).

Later that day, Bailey sent a text message to Cunningham, stating: "Get your contracts signed tonight."  *Id.* at APP. 229.  Bailey also informed Cunningham that they would be meeting with Bentahar the following afternoon.  *Id.*  Cunningham declined, stating: "No thank you.  I have too much going on in my life to be played.

The contracts will get signed when I have autonomy over them." *Id.*  Cunningham

explained that she would not be able to meet the following day because she was

taking the day off to care for her brother, and concluded by informing Bailey that if

she had "one more issue at Advantix[,]" she would be "taking all of [her] business

elsewhere[.]" *Id.* at APP. 230.

Among the contracts that Cunningham retracted were contracts with (1) Dr.

Keith Butler, (2) Expert Surgical, and (3) Nobilis.  *See* Supplemental Response at 7-

8.  Five days after Cunningham informed Bailey that she had "retracted all contracts"

and that the contracts would not get signed until she had "autonomy over them," on

December 12, 2017, Cunningham sent an email to Bailey and other members of

Advantix management providing an update on all of her accounts that were then "in

contract stage."  *Id.* at 8; Plaintiff's Supplemental Appendix at APP. 54.

Cunningham noted that some action was being taken in each of the accounts then in

the contract stage.  Plaintiff's Supplemental Appendix at APP. 54

Sometime thereafter, Bentahar sent Cunningham a text message inquiring

about the contracts that Cunningham was "holding until" she had "full autonomy,"

and asking whether Advantix would receive those contracts.  *Id.* at APP. 55.

Cunningham responded on December 15, 2017, stating: "Oh no sorry for any

misunderstanding but I'm not withholding any [contract]s due to autonomy I sent an

update on all contracts out earlier this week."  *Id.*; Supplemental Response at 12.

Shortly thereafter, Cunningham was terminated.  In her declaration,

Cunningham states that on December 18, 2017, she met with Bailey and Bentahar,

who informed her that she was being terminated due to insubordination.  Plaintiff's

Supplemental Appendix at APP. 48; Supplemental Response at 7.  Members of

Advantix's management, on the other hand, contend that Cunningham was either

terminated *on* December 15, 2017 (Plaintiff's Supplemental Appendix at APP. 12),

or that Cunningham was terminated *effective* December 15, 2017 (Defendant's

Appendix in Support at APP. 3).  Cunningham was given no prior notice of her

termination.  Supplemental Response at 5.  Cunningham asserts that "[Advantix]

had the practice of granting male employees multiple chances to correct performance

and regularly allowed male employees time to seek other employment before being

let go from Advantix."  *Id.*  Cunningham also maintains that she was terminated by

Advantix due to her sex, and "in retaliation for complaining about [Advantix]'s

sexually discriminatory pay practices, sexual harassment, and sexually discriminatory

and hostile work environment."  Supplemental Response at 6, 9.

Cunningham claims that during her employment at Advantix, she was

subjected to comments from her supervisors and a coworker that made her "very

uncomfortable at the office and interfered with her ability to properly carry out her

duties on the job."  *Id.* at 14.  Specifically, Cunningham alleges that she received

"demeaning comments based on [her] sex[.]"  *Id.* at 13.  Cunningham lists these

comments in her response as follows:

> (1) comments about Plaintiff's looks by Mr. Handy and
> others; (2) Mr. Bentahar compl[i]mented Cunningham and
> said, "You're a pretty girl.  You're charismatic.  Doctors love
> to schmooze with you"; (3) Mr. Handy stated, "My auto
> dealers would love if you and your friend came up there

in . . . that pink dress that your friend was wearing the other day"; and (4) on several occasions, a coworker told Cunningham that "you just sit there and look pretty" or similar words.

Plaintiff's Brief in Opposition of Defendant's Motion for Summary Judgment

("Response") (docket entry 49) at 12.

Cunningham also claims that during her employment at Advantix, she was sexually harassed by a client named Mike Lopez ("Lopez"). Supplemental Response at 9. On one occasion, Cunningham showed Bentahar text messages between Lopez and Cunningham, in which Lopez said "stop being a b [*sic.*] and come have a drink with me . . . [y]ou've been sketchy as fuck." *Id.* at 15. Cunningham then informed Bentahar that Lopez had invited her to some parties that Lopez was attending; Cunningham further stated that she would "do the song and dance with [Lopez] for this weekend only[.]" Plaintiff's Supplemental Appendix at APP. 58. Bentahar replied to Cunningham, stating: "If you need backup I'm here . . . [o]r will send him Jeff" (*i.e.*, another male Advantix employee). *Id.* at APP. 59; Supplemental Response at 15.

Cunningham insists that she communicated to Handy and Bentahar, on at least twelve occasions, that she did not want to sign Lopez as a client and that Lopez sexually harassed her. Supplemental Response at 15; Plaintiff's Supplemental Appendix at APP. 45-46. At her deposition, Cunningham identified several instances in which Lopez allegedly harassed Cunningham during her employment at Advantix. Namely, Cunningham asserted that Lopez harassed her: (1) at the National Auto

Dealers Association ("NADA") convention in New Orleans, which occurred in January 2017; (2) at a business development event in Scottsdale, Arizona, which occurred in February 2017; and (3) through various unspecified phone calls and text messages. *See* Motion at 23; Defendant's Appendix at APP. 169-180. Cunningham also attended a lunch with Lopez and several other Advantix employees on March 3, 2017. Plaintiff's Supplemental Appendix at APP. 46. When asked at her deposition whether she had had further interactions with Lopez on March 3, 2017 after the lunch, Cunningham stated: "I don't remember[.]" Defendant's Appendix at APP. 176. In the declaration appended to her response, however, Cunningham states that on the night of March 3, 2017, she was pressured by Lopez and Jessi Rayhill (another Advantix employee) to "go out with them," despite Cunningham's unwillingness to do so. Plaintiff's Supplemental Appendix at APP. 46. Cunningham asserts that she met with Lopez and Rayhill at around 11 p.m. that evening, and can not "recall much of what happened after [her] first hour there." *Id.* Cunningham further states that "[t]he next thing [she] remember[s] is waking up in [Lopez]'s hotel room, partially unclothed, feeling violated and sick." *Id.* Cunningham did not know how she got to Lopez's hotel room, and she believes that she "was sexually assaulted, violated, and/or taken advantage of." *Id.*

In May of 2017, at some point on or before May 5, Lopez declined to renew his contract with Advantix. Supplemental Response at 9-10; *see* Plaintiff's Supplemental Appendix at APP. 47. Cunningham asserts that she was blamed for losing Lopez's account, and that her superiors demanded that she win back Lopez's

business.  Supplemental Response at 10.  On May 5, 2017, Handy sent Cunningham a text message asking her to explain why Lopez had cancelled the account.  *See id.* at 15; Plaintiff's Supplemental Appendix at APP. 56.  In response to this message, Cunningham stated: "I said from the get go I didn't want to be [Lopez's] direct contact [because of] the way he ran all over me in the past[.]" Supplemental Response at 15; Plaintiff's Supplemental Appendix at APP. 56.  In her declaration, Cunningham states: "Mike [Lopez]'s sexual harassment towards me continued until he cancelled his account in May 2017."  Plaintiff's Supplemental Appendix at APP. 46.  Cunningham further states: "[i]n November and December 2017, I told [Bentahar] about [the] offensive behavior and treatment by [Lopez] and others in the office."  *Id.* at 47.  Advantix did not conduct an investigation based on Cunningham's complaints.  *Id.*

## B.  Procedural Background

Cunningham filed her original complaint against Advantix on January 25, 2019.  Plaintiff's Original Complaint and Jury Demand ("Complaint") (docket entry 1).  Cunningham asserts five claims against Advantix: (1) sex-based discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) retaliation, in violation of Title VII; (3) sexual harassment, in violation of Title VII; (4) unequal compensation, in violation of the Equal Pay Act

("EPA"), and; (5) misclassification, in violation of the Fair Labor Standards Act ("FLSA").  *See* Supplemental Response.[1]

Advantix filed the instant motion for summary judgment, brief in support, and appendix in support on October 28, 2019.  *See* Defendant's Motion for Summary Judgment (docket entry 21); Motion (docket entry 22); Defendant's Appendix (docket entry 23).  Three days before the plaintiff's deadline to respond to the defendant's motion, on November 15, 2019, the plaintiff filed a motion to continue the deadline to respond until January 14, 2020, due to the plaintiff's inability to timely depose several of the defendant's employees: Amine Bentahar, Peter Handy, John Bailey, and Ed Ferreri.  *See* Plaintiff's Motion for Continuance (docket entry 27) at 1-2.  The court granted the plaintiff's motion for continuance, thus affording the plaintiff the opportunity to respond to the defendant's motion for summary judgment no later than January 14, 2020.  Order (docket entry 35) at 2.

The plaintiff deposed Messrs. Ferreri, Handy, and Bentahar on January 6, 8, and 10, 2020, respectively.  *See* Appendix in Support of Plaintiff's Brief in Support of Response to Defendant's Motion for Summary Judgment ("Plaintiff's Appendix") (docket entry 50) at 1.  The plaintiff then filed her response to the defendant's motion, her brief in support, and her appendix in support on January 14, 2020.  *See*

---

[1]       In her complaint, the plaintiff presents her claims in a different order. *See* Complaint.  For the sake of clarity, however, the court will address the plaintiff's claims in the order in which the parties address the claims in the motion for summary judgment and response thereto.

Plaintiff's Response and Brief in Opposition of Defendant's Motion for Summary Judgment (docket entry 48); Response (docket entry 49); Plaintiff's Appendix (docket entry 50).  The defendant filed its reply on January 28, 2020.  Defendant's Reply in Support of Motion for Summary Judgment (docket entry 55).

On the same day, the defendant filed objections to some of the evidence in the plaintiff's appendix in support of her response to the motion for summary judgment. *See* Defendant's Objections to Plaintiff's Summary Judgment Evidence ("Objections") (docket entry 56).

Also on January 28, 2020, the plaintiff filed a motion to compel the deposition of Amine Bentahar.  Plaintiff's Motion to Compel Deposition of Amine Bentahar and Brief in Support (docket entry 53).  The court granted the plaintiff's motion to compel, and afforded the plaintiff the opportunity to submit supplemental briefing no later than March 6, 2020.  Order (docket entry 60) at 3.  On March 6, 2020, the plaintiff filed her supplemental response brief (docket entry 62), and her supplemental appendix in support (docket entry 63).  The defendant elected not to file a supplemental reply in support of its motion for summary judgment.  Accordingly, the defendant's motion for summary judgment is now ripe for determination.

## II.  ANALYSIS

### A.  Summary Judgment Legal Standard

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1).[2]  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in her favor.  *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)).  However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact.  See *Malacara v. Garber*, 353 F.3d 393, 405 (5th

---

[2]      Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

Cir. 2003).  The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986).  "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara*, 353 F.3d at 405.

### B.  Advantix's Evidentiary Objections

In its objections, Advantix argues that various pieces of evidence in Cunningham's appendix in support should be stricken from the record.  *See* Objections.  The plaintiff filed a response to the defendant's objections on February 3, 2020 (docket entry 58), and the defendant filed a reply in support of its objections on February 17, 2020 (docket entry 61).  Although the objections are ripe for determination, the court declines to reach the merits of the objections.  For the reasons stated below, even after considering all of the plaintiff's summary judgment evidence, the court concludes that the defendant is entitled to summary judgment.  Thus, Advantix's objections to Cunningham's summary judgment evidence are denied as moot.

### C.  Application

#### 1.  *Cunningham's Title VII Claim for Sex-Based Discrimination*

Cunningham's claim for sex-based discrimination in violation of Title VII is premised on two theories.  Cunningham asserts (1) that she was discriminated

against with respect to her compensation, and (2) that she was discriminated against with respect to her termination.  Supplemental Response at 3, 6.

To maintain a claim under Title VII, a plaintiff must comply with the time limitations set forth in 42 U.S.C. § 2000e-5(e)(1).  Prior to filing a Title VII claim, a plaintiff generally must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the occurrence of the alleged unlawful employment practice.  *See* 42 U.S.C. § 2000e-5(e)(1); *Washington v. Patlis*, 868 F.2d 172, 175 (5th Cir. 1989).  Claims based on allegations contained in a late-filed charge of discrimination are time-barred.  See *Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 356 (5th Cir. 2013) ("[A] claim based on [an allegedly discriminatory] act is not actionable under Title VII if the act occurred more than 300 days before the charge was filed.").

Where, as here, a plaintiff attempts to prove a violation of Title VII using circumstantial evidence, the *McDonnell Douglas* burden shifting analysis applies.[3]  See *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973);  *Ackel v. National Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).  The initial burden for such claims resides with the plaintiff, who must establish the *prima facie* elements of her claims.  *Ackel*, 339 F.3d at 385; *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001).  Once the plaintiff demonstrates these initial elements, the burden shifts to the defendant to articulate a legitimate,

---

[3]     Cunningham concedes that her discrimination claim is premised wholly upon circumstantial evidence.  *See* Supplemental Response at 3.

nondiscriminatory reason for its adverse employment decision.  See *McDonnell Douglas*, 411 U.S. at 802.  If the defendant is able to state such a proper reason, the burden shifts back to the plaintiff to demonstrate that the reason proffered by the defendant is mere pretext.  See *Okoye*, 245 F.3d at 512; *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).  "The issue at the pretext stage is not whether the [employer]'s reason was actually correct or fair, but whether the decisionmakers honestly believed the reason."  *Harville v. City of Houston, Mississippi*, 945 F.3d 870, 877 (5th Cir. 2019); see also *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("The issue at the pretext stage is whether [employer]'s reason, even if incorrect, was the real reason for [the employee]'s termination."), *cert. denied*, 539 U.S. 926 (2003).

To make out a *prima facie* case of discrimination at the summary judgment stage, a plaintiff "must produce evidence that she (1) is a member of a protected class, (2) was qualified for the position that she held, (3) was subject to an adverse employment action, and (4) was replaced by someone outside of her protected class or treated less favorably than other similar[l]y-situated employees who were not in her protected class."  *Harville*, 945 F.3d at 875 (citation omitted).

a. *Discriminatory Compensation*

The plaintiff asserts that she was discriminated against with respect to her compensation in two ways: first, that she was paid less than similarly situated male employees throughout her time at Advantix, and second, that the defendant's alleged

failure to pay the plaintiff for the period between December 15, 2017 and December 18, 2017 was discriminatory.  Supplemental Response at 4.

The first two elements of the plaintiff's *prima facie* discrimination case are not in dispute: (1) Cunningham is a woman, and therefore a member of a protected class, and (2) she was qualified for her position as an account manager.  With respect to the third element, that she was subject to an adverse employment action, the only allegation of an adverse employment action that the plaintiff supports with competent summary judgment evidence is that she was not compensated for three days of work between December 15, 2017 and December 18, 2017.[4]  *Id.*  Nonetheless, the plaintiff fails to point to any evidence in support of the fourth

---

[4]      The plaintiff concedes that she filed her charge of discrimination with the EEOC more than 300 days after Advantix raised Cunningham's salary to match that of Max Williams.  Supplemental Response at 3.  Cunningham's claim is therefore not supported by evidence that Advantix initially paid Williams a higher base salary than Cunningham.  See *Mack*, 541 F. App'x at 356 ("[A] claim based on [an allegedly discriminatory] act is not actionable under Title VII if the act occurred more than 300 days before the charge was filed.").  The plaintiff attempts to remedy her lack of evidence by asserting that it is her "intent to show that during the relevant 300-day period preceding the filing of Plaintiff's EEOC charge, Plaintiff received discriminatory paychecks based on the pay of other similarly situated male employees other than Max Williams."  Response at 4.  The plaintiff also avers that she "has requested, and has yet to receive, employment information for similarly situated employees" at Advantix, and that plaintiff's counsel "will be filing a Motion to Compel the same."  Supplemental Response at 4.  The plaintiff's "intent" to show discrimination, unsupported by evidence, is insufficient at the summary judgment stage, where the nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in her favor.  See *Anderson*, 477 U.S. at 249.  Furthermore, the plaintiff has had ample time to marshal evidence in support of her claims.  The discovery deadline in this case was originally set for November 30, 2019, but was later extended until January 30, 2020.  *See* Order (docket entry 31).  This extended deadline has come and gone, and the plaintiff has failed to point the court to competent evidence in the record to sustain her discriminatory compensation claim.

element of her *prima facie* case.  There is no indication in the record that, with respect to Advantix's alleged failure to pay Cunningham for the period between December 15, 2017 and December 18, 2017, Cunningham was "treated less favorably than other similar[l]y-situated employees who were not in her protected class."  See *Harville*, 945 F.3d at 875.  Accordingly, the court finds that the plaintiff has failed to establish a *prima facie* case of discriminatory compensation.

### b.  *Discriminatory Termination*

With respect to Cunningham's *prima facie* case for discriminatory termination, the first three elements are not in dispute: (1) Cunningham is a woman; (2) she was qualified for her position, and; (3) she was subjected to the adverse employment action of termination.  The defendant, however, asserts that Cunningham has failed to establish the fourth element of her *prima facie* case, Motion at 14, *viz.*, that she was "replaced by someone outside of her protected class or treated less favorably than other similar[l]y-situated employees who were not in her protected class."  *Harville*, 945 F.3d at 875.

The defendant asserts, and the plaintiff does not dispute, that "[a]fter Cunningham was terminated, her account manager position was not filled."  Motion at 14.  Accordingly, to establish the fourth element of her discriminatory termination claim, the plaintiff must provide evidence that she was treated less favorably than similarly-situated male employees with respect to termination.  Stated differently, the plaintiff must show that she was treated less favorably than similarly-situated persons outside of her protected class "under nearly identical circumstances."  See *Lee v.*

*Kansas City Southern Railway Co.*, 574 F.3d 253, 259 (5th Cir. 2009).  The Fifth

Circuit has "emphasized that 'nearly identical' is not synonymous with 'identical.'"

*Harville*, 945 F.3d at 875 (quoting *Lee*, 574 F.3d at 260).  Rather, "employment

actions being compared will be deemed to have been taken under nearly identical

circumstances when the employees being compared held the same job or

responsibilities, shared the same supervisor or had their employment status

determined by the same person, and have essentially comparable violation histories."

*Id.* (quoting *Lee*, 574 F.3d at 260).  Here, the court concludes that the plaintiff has

failed to establish the fourth element of her *prima facie* case.

The crux of the plaintiff's claim for discriminatory termination is that several

male Advantix employees were granted "multiple chances to correct performance and

regularly allowed . . . time to seek other employment before being let go from

Advantix[,]" whereas Cunningham "was given no prior notice of her termination"

and "was not given the chance to correct her alleged insubordinance."  Supplemental

Response at 5.  Even if it is assumed *arguendo* that this is true, Cunningham

nonetheless fails to establish that her male co-workers that were terminated had

"violation histories" that were "essentially comparable" to Cunningham's own

violation history.  See *Harville*, 945 F.3d at 875.  Cunningham avers that several of

her male co-workers were terminated for various reasons.  Specifically, Cunningham

states: (1) that Jeff Fernandez, who allegedly failed to produce adequate sales and

"exhibited unprofessional, disrespectful, racist and sexist language," was terminated

for his failure to sell; (2) that Will Gallahue, who allegedly "was not delivering to the

expectations of his role or to the expectations of Amine Bentahar," was afforded "multiple warnings and many months prior notice before he was terminated;" (3) that Jayson Cole was only given "slaps on the wrist" for engaging in "negligent SEO tactics" and was not terminated; and (4) that an Advantix employee named Joe "was not performing but was allowed weeks of time to find another job" before his termination because Joe's wife had recently had a baby.  Plaintiff's Supplemental Appendix at APP. 44-45.

Cunningham's assertions, assuming they are true, establish that some of her former male co-workers were terminated for their inability to perform their jobs. Advantix asserts that Cunningham, on the other hand, was terminated for insubordination, that is, her unwillingness to perform her job rather than her inability to do so.  Less than two weeks before her termination, Cunningham told her supervisor that if she had "one more issue at Advantix[,]" she would be "taking all of [her] business elsewhere[.]"  Cunningham does not allege, much less provide evidence, that any similarly situated male employee engaged in similar conduct. Accordingly, the court concludes that Cunningham has failed to establish that her termination occurred "under nearly identical circumstances" to those of similarly situated male employees.  Cunningham therefore fails to establish the fourth element of her *prima facie* case for discriminatory termination.

Even if it is assumed, however, that Cunningham had established her *prima facie* case, Advantix would nonetheless be entitled to summary judgment.  If a plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the

defendant to articulate a non-discriminatory justification for the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802.  Here, the defendant carries that burden.

Advantix asserts that Cunningham was terminated for misconduct and insubordination.  Motion at 5.  Specifically, Advantix provides evidence that less than two weeks before her termination, Cunningham informed her supervisor Jon Bailey that she was retracting all of her contracts with prospective clients until Advantix agreed to comply with her requests.  Defendant's Appendix at APP. 153; 227.  Bailey responded that he couldn't help Cunningham unless she got the contracts signed, to which Cunningham replied: "I can't in good faith send that contract out knowing there's a chance it won't be handled to my liking . . . I'm at the point where I need autonomy when it comes to my money otherwise I'm not doing it."  *Id.* at APP. 228.  Cunningham also informed Bailey that if she had "one more issue at Advantix[,]" she would be "taking all of [her] business elsewhere[.]"  *Id.* at APP. 230.  Accordingly, there is ample uncontroverted evidence in the record to support Advantix's assertion that Cunningham was terminated for insubordination.

Cunningham asserts that there is a genuine issue of material fact as to whether Advantix's reason for terminating Cunningham was pretextual.  To support this argument, Cunningham points to the fact that "[o]n December 12, 2017, during the period of [Cunningham]'s alleged refusal to submit contracts, [Cunningham] emailed" Bailey, Bentahar, Handy, and Ferreri with updates on all of her outstanding client contracts.  Supplemental Response at 8.  It is true that on

December 12, 2017, Cunningham purported to have reneged on her previous retraction of client contracts. The fact remains, however, that in the weeks leading up to her termination, Cunningham informed her supervisor that she was retracting client contracts until Advantix agreed to her terms, and threatened to take all of her business at Advantix elsewhere. Advantix asserts that Cunningham was terminated for this insubordination, and Cunningham fails to establish a genuine fact issue as to whether Advantix's decision to terminate Cunningham for insubordination was pretextual. See *Sandstad*, 309 F.3d at 899 ("The issue at the pretext stage is whether [the employer]'s reason, even if incorrect, was the real reason for [the employee]'s termination.").

In summary, the court concludes that, with respect to her claim for discriminatory termination, Cunningham fails to establish the fourth elements of her *prima facie* claim. Furthermore, even if Cunningham could meet the fourth element, Advantix would nonetheless be entitled to summary judgment in light of the fact that Cunningham was terminated for a nondiscriminatory reason.

### 2.  *Cunningham's Title VII Claim for Retaliation*

In addition to asserting that she was terminated for a discriminatory reason, Cunningham also contends that she was terminated in retaliation for complaining about Advantix's "sexually discriminatory pay practices, sexual harassment, and sexually discriminatory and hostile work environment." Supplemental Response at 9.

Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C.

§ 2000e-3(a).  A claim of retaliation follows a burden-shifting analysis similar to the one employed in cases of gender discrimination.  See *Septimus v. University of Houston*, 399 F.3d 601, 610-11 (5th Cir. 2005).  To establish a *prima facie* case of unlawful retaliation under Title VII, a plaintiff must demonstrate that (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between participation in the protected activity and the adverse employment action.  *Id.*  With regard to the first element, "protected activity" includes both an employee's opposition to practices made unlawful by Title VII and an employee's participation in the investigation of practices made unlawful by Title VII.  See *Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 555 U.S. 271, 274 (2009).

Here, there is no contention that Cunningham participated in any investigation of unlawful employment practices.  Rather, Cunningham asserts that she made multiple requests to stop working on Mike Lopez's account, and that in November and December of 2017, Cunningham told Bentahar "about the offensive behavior and treatment by Mr. Lopez and others in the office."  Supplemental Response at 10.  Bentahar, in his deposition, stated that he did not know of any complaints that Cunningham may have made to anyone at Advantix in December of 2017.  Plaintiff's Supplemental Appendix at 70.  When the evidence is viewed in the light most favorable to the nonmoving party, however, there is a question of fact as to whether Cunningham engaged in opposition to practices made unlawful by Title VII when she asked to stop working on Lopez's account, and when she reported to

Bentahar in November and December of 2017 "about the offensive behavior and treatment by Mr. Lopez and others in the office."

With regard to the second prong, it is undisputed that Cunningham was subject to the adverse employment action of termination in December of 2017.

The plaintiff's *prima facie* claim founders, however, on the third prong: establishing a causal nexus between the protected activity and the adverse employment action.  To establish a nexus, the plaintiff appears to rely solely on the proximity between her reports to Bentahar in November and December of 2017, and her termination in December 2017.  *See* Supplemental Response at 10 ("In November and December 2017, Plaintiff told Amine Bentahar about the offensive behavior and treatment by Mr. Lopez and others in the office. [] Plaintiff was subsequently terminated on December 18, 2017.").  In some cases, "[c]lose timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. General Services Administration*, 110 F.3d 1180, 1188 (5th Cir.), *cert. denied*, 522 U.S. 948 (1997).  But "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case." *Id.* at 1188 n.3 (emphasis in original).  Here, the plaintiff does not point to any evidence to suggest that her reports to Bentahar were in some way connected to her subsequent termination.  The court therefore concludes that the plaintiff has failed to establish the third prong of her *prima facie* case.

Moreover, even if it be assumed *arguendo* that the plaintiff were able to make out a *prima facie* case of retaliation, the defendant would nonetheless be entitled to summary judgment. As discussed above in relation to the plaintiff's claim for discrimination, Advantix provides ample evidence to establish that Cunningham was terminated in December of 2017 for a nondiscriminatory reason, namely, insubordination.

Accordingly, the defendant is entitled to summary judgment on the plaintiff's claim of retaliation.

### 3. *Cunningham's Title VII Claim for Sexual Harassment*

The plaintiff's Title VII claim for sexual harassment claim is premised on the hostile work environment theory of harassment.[5] Cunningham asserts that she was subjected to a hostile work environment by (1) her coworkers and managers, and (2) Advantix's client Mike Lopez.

### a. *Legal Standard for Hostile Work Environment Claims*

A hostile work environment claim requires the a plaintiff to show the following: (1) the employee belongs to a protected group; (2) the employee was subject to harassment; (3) the harassment complained of was based upon the employee's belonging to a protected group; (4) the harassment complained of affected a term, condition, or privilege of employment, and; (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

---

[5]     The plaintiff also states that she brings a claim for quid pro quo harassment, Supplemental Response at 13; however, the plaintiff leaves her assertion of quid pro quo undeveloped and the court therefore declines to address it.

*Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).  An employer may be held liable under Title VII for harassment perpetrated by employees and nonemployees alike.  See *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 322 (5th Cir. 2019), *as revised* (Feb. 7, 2019) (noting that under Title VII, "nonemployees can be the source of the harassment[,]" and that "[c]ustomers are one example of third-party harassers.").  When an employee brings a "Title VII sexual harassment case alleging that a supervisor with immediate (or successively higher) authority over the employee harassed the employee[,]" the employee "need only satisfy the first four elements of the test outlined above."  *Watts*, 170 F.3d at 509.

> b.  *Cunningham's Claim of Harassment by Advantix Employees*

Cunningham asserts that several of her coworkers and managers at Advantix created a hostile work environment by subjecting her to sexual harassment. Supplemental Response at 13-14.  Specifically, Cunningham alleges that she received the following comments:

> (1) comments about Plaintiff's looks by Mr. Handy and others; (2) Mr. Bentahar compl[i]mented Cunningham and said, "You're a pretty girl.  You're charismatic.  Doctors love to schmooze with you"; (3) Mr. Handy stated, "My auto dealers would love if you and your friend came up there in . . . that pink dress that your friend was wearing the other day"; and (4) on several occasions, a coworker [(Jeff Fernandez)] told Cunningham that "you just sit there and look pretty" or similar words.

Response at 12; *see also* Defendant's Appendix at APP. 49.  At her deposition, Cunningham testified that Mr. Handy made comments about her looks "a few times," and that Mr. Fernandez commented on her appearance "[a]round five" times.

- 27 -

Defendant's Appendix at APP. 45, 50.  Taken together, the comments that Cunningham complains of occurred on approximately ten occasions over the course of Cunningham's twenty-one month tenure at Advantix.  Cunningham also avers that these comments took place at sales meetings and in the office, that the comments made her very uncomfortable at the office, and that they interfered with her ability to properly carry out her job duties.  Plaintiff's Supplemental Appendix at APP. 47.[6]

The court concludes that Cunningham has established the first three elements of her *prima facie* case: (1) Cunningham is a woman, and thus a  member of a protected class; (2) the comments leveled at Cunningham were harassing in nature, and; (3) the comments largely pertained to Cunningham's sex.  The plaintiff fails, however, to establish the fourth element: that the harassment complained of affected a term, privilege, or condition of employment.  See *Watts*, 170 F.3d at 509.

"Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Hernandez v. Yellow Transportation, Inc.*, 670 F.3d 644, 651 (5th Cir.) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)), *cert. denied*, 568 U.S. 817 (2012).  To satisfy this element, "the work environment must be 'both objectively and subjectively offensive, one that a

---

[6]     Cunningham's supplemental response further states: "Plaintiff started avoiding sales meetings or coming into the office as a result of the offensive behavior."  Supplemental Response at 14.  The paragraph in Cunningham's declaration which the plaintiff cites in support of this statement, however, does not support the plaintiff's assertion that she began avoiding sales meeting and the office. *See* Supplemental Appendix at APP. 47, ¶ 15.

reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). "In order to deem a work environment sufficiently hostile, 'all of the circumstances must be taken into consideration.'" *Id.* (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). "This includes the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quotation marks and citations omitted).

Here, the court concludes that the comments that Cunningham received about her appearance, though offensive and unwelcome to Cunningham, were not sufficiently severe or pervasive to affect a term, condition, or privilege of Cunningham's employment. Cunningham was subjected to these comments on only approximately ten occasions. Cunningham does not indicate when during her twenty-one month tenure at Advantix these comments occurred, but regardless of their timing, the court concludes that the comments were not particularly frequent or pervasive. See *Stewart v. Mississippi Transportation Commission*, 586 F.3d 321, 330-31 (5th Cir. 2009) (holding that the plaintiff failed to establish an objectively hostile work environment where her male supervisor told her that they "should be 'sweet' to each other and stated that he loved her approximately six times" over the course of about one month); cf. *Lauderdale v. Texas Department of Criminal Justice, Institutional Division*, 512 F.3d 157, 164 (5th Cir. 2007) (finding "pervasive" harassing behavior

where the plaintiff alleged that her supervisor called her ten to fifteen times a night for almost four months, and engaged in other harassing conduct).

It is well settled that infrequent or "isolated incidents, if egregious, can alter the terms and conditions of employment." See *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 403 (5th Cir. 2013) (quoting *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 436 (5th Cir. 2005)); see also *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"). Here, however, the comments directed at Cunningham were not threatening, nor were they objectively so egregious or humiliating as to alter the terms and conditions of her employment. In fact, aside from Cunningham's bald assertion that the comments made her "very uncomfortable" and interfered with her ability to perform her job, there is no evidence in the record to support Cunningham's assertion that the comments affected any term or condition of Cunningham's employment. To the contrary, Advantix presents uncontroverted evidence that during the period between March 2017 and December 2017, Cunningham was the second highest paid employee at Advantix.

The objective lack of severity of the comments, coupled with Cunningham's failure to provide evidence of any term or condition of her employment that was affected by the alleged harassment, prompts the court to conclude that no reasonable jury could find that Cunningham was subjected to a hostile work environment. See *Holmes v. North Texas Health Care Laundry Cooperative Association*, 304 F. Supp. 3d

525, 547 (N.D. Tex. 2018) (Lindsay, J.) (granting summary judgment in favor of employer on employee's hostile work environment claim where employee "produced no evidence showing that she failed to perform her job, was discouraged from continuing to work for [employer] and sought employment elsewhere, or failed to advance in her career as a result of the harassment.").

In summary, the court concludes that the conduct to which Cunningham was subjected at Advantix was neither sufficiently severe nor sufficiently pervasive to alter a term, condition, or privilege of Cunningham's employment. Accordingly, Advantix is entitled to summary judgment on Cunningham's claim of employer harassment.

### c. *Cunningham's Claim of Third-Party Harassment*

Cunningham's claim of third-party harassment is based on the treatment to which she was allegedly subjected by Advantix's client Mike Lopez. Advantix argues that the instances in which Lopez allegedly harassed Cunningham all occurred outside of the applicable limitations period and therefore are not actionable. The court agrees.

Similar to claims of discrimination, "[t]o bring an action for sexual harassment . . . under Title VII in Texas, the plaintiff must file a verified charge [with the EEOC] within 300 days of the alleged unlawful conduct." *Doe v. Fort Worth Texas*, No. 4:19-CV-1001-A, 2020 WL 1159435, at *3 (N.D. Tex. Mar. 10, 2020) (McBryde, J.) (citing *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 109 (2002)). Here, it is undisputed that Cunningham filed her charge of harassment with the EEOC "on January 25, 2018, making the preceding 300th day

approximately March 31, 2017." Supplemental Response at 14. Cunningham also concedes that "any claim based on alleged harassment occurring before March 31, 2017 is untimely." *Id.* Accordingly, the issue before the court is whether Cunningham has presented sufficient evidence that she was subjected to a hostile work environment between March 31, 2017, and December 2017, when she was terminated. The court concludes that she has not.

The plaintiff seeks to establish the second element of her hostile work environment claim—that she was subjected to harassment—by pointing to the statement in Cunningham's declaration that: "[Lopez]'s sexual harassment towards [Cunningham] continued until [Lopez] canceled his contract in May 2017." Supplemental Response at 14; Plaintiff's Supplemental Appendix at APP. 46. Lopez cancelled his contract with Advantix on or before May 5, 2017. *See* Supplemental Response at 15; Plaintiff's Supplemental Appendix at APP. 56. Thus, the plaintiff's window to show that Lopez subjected her to harassment is between March 31, 2017 and May 5, 2017.

Even if it be assumed *arguendo* that Lopez subjected Cunningham to harassment between March 31 and May 5 of 2017, Cunningham nonetheless fails to establish the fourth element of her *prima facie* case for harassment: that the harassment complained of affected a term, condition, or privilege of her employment. As laid out in greater detail above, "[h]arassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions

of the victim's employment and create an abusive working environment." *Hernandez*,

670 F.3d at 651 (internal quotations omitted).

Here, the plaintiff has not pointed to any evidence in the record of how severe

or pervasive the harassment may have been that allegedly occurred between March

31 and May 5, 2017.  And, as with her allegations of supervisor harassment, the

plaintiff fails to establish that any term, condition, or privilege of her employment

was affected by Lopez's alleged harassment.  See *Holmes*, 304 F. Supp. 3d at 547.

Accordingly, the court concludes that the plaintiff has failed to establish a *prima facie*

case of client-based harassment under Title VII.[7]

In summary, the court concludes that the plaintiff has failed to establish that

any of the alleged harassment to which she was subjected after March 31, 2017 was

sufficiently severe or pervasive to alter a term, condition, or privilege of her

employment.  Accordingly, Advantix is entitled to summary judgment on

Cunningham's claim of third-party harassment.

### 4.  *Cunningham's EPA Claim for Discriminatory Compensation*

In her supplemental response, Cunningham asserts that her Equal Pay Act

claim is premised on two grounds: (1) the disparity in pay received by Cunningham

---

[7]     The defendant also argues that Cunningham's claim of client-based harassment fails as a matter of law  because "the alleged client harassment was not unwelcome."  Motion at 24-28.  The court declines to address this argument, however, because all of the alleged harassment that Advantix asserts was "not unwelcome" took place prior to March 31, 2017.  Because Cunningham fails to specify any acts of harassment that occurred within the 300 day period preceding the filing of her EEOC charge, the court is unable to determine whether any such acts were unwelcome.

as compared to Max Williams prior to Williams's termination in November 2016, and (2) Advantix's alleged failure to pay Cunningham as much as other similarly situated male employees between November 2016 and December 2017. Supplemental Response at 17. Advantix argues that Cunningham's EPA claim, insofar as it concerns the disparity between Cunningham's and Williams's salaries, is time-barred. The court agrees.

"Claims under the FLSA, including Equal Pay Act claims, must be filed within two years after the cause of action accrues, or within three years if the alleged violation was 'willful.'" *Ikossi-Anastasiou v. Board of Supervisors of Louisiana State University*, 579 F.3d 546, 552 (5th Cir. 2009), *cert. denied*, 559 U.S. 904 (2010) . "An employer willfully violates the [EPA] if it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). On the other hand, "[a]n employer who 'act[s] without a reasonable basis for believing that it was complying with the [EPA]' is merely negligent." *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134-35 (1988)). "Because willfulness is a question of fact, summary judgment in favor of the employer is inappropriate if the plaintiff has introduced evidence sufficient to support a finding of willfulness." *Ikossi-Anastasiou*, 579 F.3d at 552 (citations omitted).

Here, it is undisputed that the last time that the plaintiff was affected by the allegedly discriminatory pay differential between Cunningham and Williams was in

November of 2016 when Williams was terminated, *see* Supplemental Response at 17, and the plaintiff did not file this suit until more than two years later, on January 25, 2019, *see* Complaint. Cunningham nonetheless asserts that her claim is timely under the EPA's three-year statute of limitations, which applies in cases of "willful" violation of the EPA. The plaintiff's argument is unavailing.

Cunningham points to no evidence in the record in support of her assertion that Advantix willfully violated the EPA. Instead, Cunningham merely asserts that "it is [the] [p]laintiff's position that [the] [d]efendant's violation of the EPA was willful and would therefore impute a limitation of three years if proved." *Id.* This assertion, standing alone, does not amount to evidence sufficient to support a finding of willfulness. See *Ikossi-Anastasiou*, 579 F.3d at 553 (finding evidence that a female plaintiff "was paid less than many of her male colleagues and that [her employer] knew she was dissatisfied with this difference [was] not enough to raise a fact question as to whether [her employer] knew or recklessly disregarded that its pay scale was prohibited by the [EPA]."); see also *Zannikos*, 605 F. App'x at 360 (concluding that the plaintiffs' allegations that employer "knew of the FLSA's potential applicability, as demonstrated by its employee handbook; failed adequately to research the statute's applicability; and failed to consult with attorneys or the [Department of Labor] on the matter" were insufficient to demonstrate willfulness).

Accordingly, the court concludes that the EPA's three year statute of limitations does not apply in this case, and that Cunningham's EPA claim is time-barred insofar as it relates to the pay differential between Cunningham and Williams.

Advantix is therefore entitled to summary judgment on this aspect of Cunningham's EPA claim.

Turning to Cunningham's assertion that Advantix violated the EPA by paying her less than similarly situated male employees other than Williams, the court concludes that Cunningham has failed to establish a *prima facie* case.

To establish a *prima facie* case under the EPA, a plaintiff must demonstrate that (1) her employer is subject to the EPA; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than members of the opposite sex providing the basis for comparison. *Jones v. Flagship International*, 793 F.2d 714, 722-23 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065 (1987).

Here, with regard to the third prong of her *prima facie* case, the plaintiff fails to point to any evidence in the record demonstrating that she was paid less than similarly situated male Advantix employees during the two year limitations period prior to the commencement of this suit on January 25, 2019.  Instead, the plaintiff cites two passages in the record, both of which concern the pay differential between Cunningham and Williams, which ended in November 2016.  Supplemental Response at 18 (citing Plaintiff's Supplemental Appendix at APP. 44, ¶2; Defendant's Appendix at APP. 2, ¶¶7-8).

The plaintiff seeks to remedy her lack of evidence by stating that she plans to file a motion to compel documents containing "employment information for similarly situated employees employed by [Advantix] during the period of [Cunningham]'s

employment by [Advantix]." *Id.* at 17.  To date, however, the plaintiff has yet to file such a motion.  Furthermore, the deadline by which discovery was to be completed in this case—initially set for November 30, 2019 and extended through January 30, 2020—has long since passed.  *See* Order Establishing Schedule and Certain Pretrial Requirements (docket entry 12); Order (docket entry 31).  In light of the plaintiff's unexplained delay in moving to compel further discovery, the court declines to delay disposition of the defendant's motion for summary judgment in anticipation of a motion to compel that may never come.  See *McCollum v. Puckett Machinery Co.*, 628 F. App'x 225, 228 (5th Cir. 2015) (per curiam) ("[O]ur precedent suggests that a district court is within its discretion to deny a motion to compel filed on or after the court-ordered discovery deadline—regardless of the requested discovery's value to the party's case.").  The court therefore concludes that Cunningham has failed to establish the third element of her *prima facie* case.

In summary, the court concludes that the EPA's two-year statute of limitations applies to Cunningham's claim, and that Cunningham has failed to establish a *prima facie* case of pay discrimination under the EPA.  Accordingly, the court concludes that Advantix is entitled to summary judgment on Cunningham's EPA claim.

### 5. *Cunningham's FLSA Claim for Misclassification*

Cunningham asserts a claim for violation of the Fair Labor Standards Act ("FLSA"), alleging that Advantix misclassified Cunningham as an exempt employee and failed to pay her overtime compensation.  Advantix argues that Cunningham is exempt from the FLSA's overtime provision.  The court agrees with the defendant.

Congress enacted the FLSA to provide each covered employee with "[a] fair day's pay for a fair day's work," and to protect them from "the evil of overwork as well as underpay." *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 333 (5th Cir. 2017) (quoting *Barrentine v. Arkansas-Best Freight Systems, Inc.*, 450 U.S. 728, 739 (1981)) (internal quotation marks omitted).  The FLSA pursues this goal, in part, through an overtime provision, which requires an employer to compensate any covered employee who works in excess of forty hours in a workweek "at a rate not less than one and one-half times the [employee's] regular rate . . . ." *Id.* at 333-34 (quoting 29 U.S.C. § 207(a)(1)).

The FLSA's general rule is that "all employees must receive overtime compensation for hours worked in excess of forty hours during a seven-day workweek." *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001).  Specifically, the FLSA provides as follows:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Although the FLSA's overtime provision appears broad, the statute contains various exemptions.  Here, Advantix asserts that it was not required to pay Cunningham overtime compensation because Cunningham fell into the FLSA's

administrative exemption, outside sales exemption, combination exemption, and highly compensated employee exemption.

When an employer asserts that an employee was exempt from the FLSA's overtime requirement, an affirmative defense, the burden of proof is on the employer.  See *Dewan*, 858 F.3d at 334 (citing *Owsley v. San Antonio Independent School District*, 187 F.3d 521, 523 (5th Cir. 1999), *cert. denied*, 529 U.S. 1020 (2000)).  "The employer has the burden of establishing that an exemption applies by a preponderance of the evidence."  *Faludi v. United States Shale Solutions, L.L.C.*, 950 F.3d 269, 273 (5th Cir. 2020) (citing *Meza v. Intelligent Mexican Marketing, Inc.*, 720 F.3d 577, 581 (5th Cir. 2013)).  The Supreme Court has instructed that courts "must give FLSA exemptions a 'fair reading' rather than narrowly construing them against the employer."  *Id.* (quoting *Encino Motorcars, LLC v. Navarro*, —— U.S. ——, 138 S. Ct. 1134, 1142 (2018)).

Here, upon consideration of Advantix's assertion of the administrative, outside sales, and combination exemptions, the court concludes that Cunningham is exempt from the overtime provision of the FLSA.  Accordingly, the court declines to consider whether the highly compensated employee exemption applies to Cunningham.

a.  *The FLSA's Administrative, Outside Sales, and Combination Exemptions*

For the administrative exemption to the FLSA's overtime provision to apply, "the employee must be one (1) who is '[c]ompensated on a salary or fee basis at a rate of not less than $455 per week;' (2) '[w]hose primary duty is the performance of office or non-manual work directly related to the management and general business

operations of the employer or the employer's customers;' and (3) '[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.'" *Dewan*, 858 F.3d at 334 (quoting 29 C.F.R. § 541.200).

For the outside sales exemption to apply, the employee must be one

> (1) Whose primary duty is (i) making sales within the meaning of section [203(k) of the FLSA], or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

> (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

*Meza*, 720 F.3d at 581(quoting 29 C.F.R. § 541.500(a)(1)-(2) (footnote omitted)).

Finally, the combination "exemption provides that '[e]mployees who perform a combination of exempt duties as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees may qualify for exemption.  Thus, for example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption.  In other words, work that is exempt under one section of this part will not defeat the exemption under any other section.'" *Dean v. Newsco International Energy Services., USA, Inc.*, No. 4:15-CV-03406, 2019 WL 3566726, at *13 (S.D. Tex. Aug. 6, 2019) (quoting 29 C.F.R. § 541.708).

"Section 541.700 of the [Department of Labor] regulations defines 'primary duty' as 'the principal, main, major or most important duty that the employee performs.'" *Meza*, 720 F.3d at 581(quoting 29 C.F.R. § 541.700).  Accordingly, the

issue before the court is whether Advantix has established that Cunningham's "principal, main, or most important duty" as an Advantix employee consisted of exempt administrative work, exempt outside sales work, or a combination of the two.

Here, the court concludes that Cunningham engaged in both exempt administrative work and exempt outside sales work, and that in combination, this exempt work constituted Cunningham's primary duty.

b. *Cunningham's Exempt Administrative Work*

The first element of the administrative work exemption is not in dispute: there is no question that Cunningham was compensated on a salary basis of at least $455 per week during the entirety of her tenure at Advantix. To establish the second and third elements, Advantix must demonstrate that Cunningham engaged in "office or non-manual work directly related to the management or general operations of the employer *or* the employer's customers," and that in regard to such work, Cunningham engaged in the "exercise of discretion and independent judgment with respect to matters of significance." *See* 29 C.F.R. § 541.200(a)(2)-(3) (emphasis added).

The regulations promulgated pursuant to the FLSA provide a non-exhaustive list of examples of "work directly related to management or general business operations" which includes "work in functional areas such as" budgeting; auditing; quality control; advertising; marketing; research; and similar activities. *Id.* § 541.201(b). The court concludes that Cunningham engaged in such work with

respect to the management and general business operations of both Advantix and

Advantix's customers.

Advantix "provides on-line marketing and consulting services . . . [by]

assist[ing] clients with on-line advertising strategies and services, including

social-media presence, paid-search advertising [], search-engine optimization, online

reputation management, and additional related services."  Motion at 1.  According to

her deposition testimony, Cunningham's job at Advantix consisted of two

components: sales and account management.  Appendix in Support at APP. 135.

Her account management work included consulting with clients regarding their needs

and providing solutions and sales strategies to meet those needs, *id.* at APP. 38-39,

135-36; negotiating back and forth with clients regarding "[b]udgets, services, [and]

timelines", *id.* at APP. 135-36;  creating advertisements, *id.* at APP. 142-43; setting

up, managing, and monitoring advertising campaigns, *id.* at APP. 140; ensuring that

services that clients requested were being rendered by Advantix, *id.*; and reporting

results to clients, *id.* at APP. 141.  Cunningham also engaged in "consultive selling,"

which Cunningham described as follows: "Where you're not just selling a product;

you're consulting with the client on their needs and then having more of a solution-

based service."  *Id.* at APP. 38.

The court concludes that these duties amount to "work directly related to

management or general business operations" of Advantix, and of Advantix's clients.

Furthermore Cunningham's deposition testimony specifically establishes that she

engaged in "work in the functional areas" of budgeting, advertising, and marketing,

all of which are listed as examples of administrative duties in 29 C.F.R. § 541.201(b).

See *Zannikos*, 605 F. App'x at 353 (finding that employees engaged in exempt

administrative work where they oversaw several functions of the employer's business,

provided the employer's "customers with inspection and operational support

services[,]" and employees's "primary duties included work in several functional areas

explicitly listed as administrative in Section 541.201(b)"); see also *Hines v. State*

*Room, Inc.*, 665 F.3d 235, 243 (1st Cir. 2011) (concluding that employees who were

sales managers at a banquet provider engaged in exempt administrative work where

the employees "worked with each client to create a custom event in all of the

particulars", and "worked to establish long-term relationships, to keep clients happy

and to maintain the overall reputation of their employers.").

    In her response,  Cunningham points to the deposition testimony of Amine

Bentahar in support of her assertion that Cunningham "was not to perform

administrative work."  Supplemental Response at 21.  According to Bentahar's

deposition testimony, Cunningham was hired to "an account executive's job [which]

is to go in and bring new business, be the main point of contact, coordinate with the

operations team to make sure that everything is being delivered that that person

sold."  Plaintiff's Supplemental Appendix at APP. 34-35.  Although Bentahar's

description of the duties that Cunningham was hired to perform is not as

comprehensive as the duties that Cunningham actually performed, nothing in

Bentahar's statement contradicts Cunningham's own testimony regarding the

administrative duties that she performed at Advantix.  Cunningham also raises a list

of duties that she asserts "she did not state she performed" during her deposition. Supplemental Response at 22-23. The court concludes that these unsupported assertions do not raise genuine issues of fact as to the duties that Cunningham performed at Advantix.[8]

Turning to the third prong of the administrative exemption, the court concludes that there is no genuine dispute of fact that Cunningham exercised discretion and independent judgment with respect to matters of significance.

The "exercise [of] discretion and independent judgment with respect to matters of significance . . . 'involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.'" *Zannikos*, 605 F. App'x at 354 (quoting 29 C.F.R. § 541.202(a)). "It is not necessary, however, that the employee['s] decisions be free from review: 'The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action.'" *Bondy v. City of Dallas*, 77 F. App'x 731, 733 (5th Cir. 2003) (per curiam) (quoting 29 C.F.R. § 541.207(e)(1))[9]; see also *Zannikos*, 605

---

[8]       For example, the plaintiff states: "It was not part of Plaintiff's duties to conceptualize, build, and manage advertising and create marketing campaigns." Supplemental Response at 23. This argument belies Cunningham's sworn deposition statement that her  account manager-type duties included "setting up campaigns, . . . managing campaigns, monitoring them, . . . coming up with branding ideas, coming up with ads and making website improvements[.]" Appendix in Support at APP. 140.

[9]       The language from § 541.207(e)(1) quoted in *Bondy* is now located in § 541.202(c).

F. App'x at 354 ("An employee need not exercise final decision-making authority to meet this standard.").

Here, Cunningham's deposition testimony clearly establishes that she exercised discretion and independent judgment with respect to client development and account management, both of which are significant aspects of Advantix's business. *See* Appendix in Support at APP. 2.  When asked whether she had help in establishing client pitches, Cunningham responded: "I think on a couple of occasions, I asked for help from other people to pull some information for me.  But for the most part, no, I was doing it all."  Appendix in Support at APP. 137.  Also, when asked if she had to get her sales pitches approved, Cunningham responded that she was required to seek approval only about half of the time.  *Id.*  Furthermore, Cunningham engaged in consultive sales, which Cunningham defined as "not just selling a product" but "consulting with the client on their needs and then having more of a solution-based service."  *See id.* at APP. 38, 136.  In her role as an account manager, Cunningham also created advertisements, negotiated back and forth with clients, consulted with clients regarding their needs, and provided solutions and sales strategies to meet those needs.

Cunningham argues that she did not exercise independence because Advantix exercised control over her employment, "including requiring her to work weekends, after business hours, and go to certain functions in order to meet clients." Supplemental Response at 22.  Cunningham also points to a passage from Bentahar's deposition testimony in which Bentahar stated that Advantix's vice president of sales

oversaw the sales team, coordinated and managed salespeople, worked with sales people on prospects, provided salespeople support if they needed help, and attended pitches with salespeople if needed.  Supplemental Response at 22; Supplemental Appendix in Support at APP. 76.  The record does not indicate whether Advantix's vice president of sales specifically provided Cunningham with such support.  However, viewing the evidence in the light most favorable to the plaintiff, and assuming that Advantix exercised control over Cunningham's employment to the extent described above, the court finds no genuine dispute of fact that Cunningham exercised independent judgment and discretion in the context of her consultative sales, account management, and client development.[10]

Accordingly, the court concludes that, based on Cunningham's description of her duties at Advantix in her deposition, Cunningham exercised discretion and independent judgment with respect to matters of significance.  See *Bondy*, 77 F. App'x at 733 (holding that employees who were event coordinators exercised independent judgment and discretion in part because of the employees' ability to plan most aspects of events, negotiate with clients on behalf of their employer, and address clients' requests and problems during events); see also *Hines*, 665 F.3d at 245 (finding that employees exercised discretion by "working with a client to create a custom product, personalized to individual tastes and budgets").

---

[10]     In her declaration, Cunningham also states: "My primary duties to Advantix did not include the exercise of discretion and independent judgment with respect to matters of significance."  Plaintiff's Supplemental Appendix at APP. 47. Such legal conclusions, however, are not competent summary judgment evidence. See *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

c. *Cunningham's Exempt Outside Sales Work*

For the outside sales exemption to apply, the employee must be one

> (1) Whose primary duty is (i) making sales within the meaning of section [203(k) of the FLSA], or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

> (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

*Meza*, 720 F.3d at 581(quoting 29 C.F.R. § 541.500(a)(1)-(2)).  Under § 203(k), the definition of sales "includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."  29 U.S.C. § 203(k).  Work that an employee performs "incidental to and in conjunction with the employee's own outside sales or solicitations" qualifies as exempt outside sales work as well.  29 C.F.R. § 541.500(b); see also *Meza*, 720 F.3d at 586 ("[The employee] never performed work that could not be classified as either sales or work incidental to his sales, and therefore never performed non-exempt activities.").

Here, the court concludes that there is no genuine dispute as to the fact that Cunningham engaged in sales and incidental work for Advantix, and that in doing so, Cunningham was customarily and regularly engaged away from Advantix's place of business.

In her deposition, Cunningham testified that she was "hired to sell." Appendix in Support at APP. 135.  As part of her sales duties, Cunningham often went out in the field to visit clients.  *Id.* at APP. 138-39.  Cunningham worked 60

- 47 -

hour per week, on average, but was in the office only two to three days a week for varying amounts of time.  *Id.* at APP. 133, 139.  She further testified that she "spent about 30 hours a week doing *outside sales*, networking[,] [and] being on appointments and stuff[.]"  *Id.* at APP. 139 (emphasis added).

In her response, Cunningham does not raise any argument as to why the "outside sales" work about which she testified in her deposition did not qualify as outside sales under the FLSA.  Instead, Cunningham asserts that outside sales work was not her primary work, and that her "work was in office and was not exclusively conducted away from Advantix's place of business."  Supplemental Response at 23.  This argument is inapposite.  For outside sales work to count as exempt work, an employee need only be "customarily and regularly engaged away from the employer's place" of business.  *See* 29 C.F.R. § 541.500(a)(2).  Here, Cunningham testified at her deposition that she spent about 30 hours each week away from the office, and that she was in the office only two or three days per week.  The court therefore concludes that there is no genuine dispute as to the fact that Cunningham customarily and regularly engaged in sales and incidental work away from Advantix's place of business.

### d.  *Cunningham's Primary Duties Consisted of Exempt Work*

Advantix asserts that Cunningham's primary duty at Advantix was the performance of  exempt administrative work, exempt outside sales work, or a combination of the two.  Cunningham rejoins that her "primary role was to participate in marketing campaigns to attract and retain business," work that

Cunningham argues is non-exempt under the FLSA. As described above, Cunningham performed both exempt administrative work and exempt outside sales work. The court now concludes that Cunningham's exempt administrative and outside sales work, in combination, amounted to her primary duty. The court therefore concludes that Cunningham was exempt from the FLSA's overtime provision under the combination exemption.[11]

"Section 541.700 of the [Department of Labor] regulations defines 'primary duty' as 'the principal, main, major or most important duty that the employee performs.'" *Meza*, 720 F.3d at 581(quoting 29 C.F.R. § 541.700). "A non-exhaustive list of factors courts consider when determining an employee's primary duty include: (1) 'the relative importance of the exempt duties as compared with other types of duties,' (2) 'the amount of time spent performing exempt work,' (3) 'the employee's relative freedom from direct supervision,' and (4) 'the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.'" *Zannikos*, 605 F. App'x at 352 n.1 (quoting 29 C.F.R. § 541.700(a)). Furthermore, "[u]nless other factors support a contrary conclusion, '[e]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement.'" *Meza v. Intelligent Mexican Marketing, Inc.*, No. 3:11-CV-1655-O, 2012 WL 12885082,

---

[11]    Because the court concludes that the combination exemption applies to Cunningham, the court need not consider whether either exempt administrative work or exempt outside sales work, standing alone, amounted to Cunningham's primary duty.

at *3 (N.D. Tex. July 2, 2012) (O'Connor, J.) (quoting 29 C.F.R. § 541.700(a)), *aff'd*, 720 F.3d 577 (5th Cir. 2013).

Here, the court concludes that there is no genuine dispute as to the fact that Cunningham spent more than 50 percent of her time engaged in exempt work. Cunningham testified at her deposition that she worked an average of 60 hours per week, that she spent about 30 hours per week engaged in "outside sales" and related out of office work, and that she spent over 30 hours per week engaged in her account management duties. Appendix in Support at APP. 139. Furthermore, the court determines that none of the other factors weighs against a finding that Cunningham's primary duty at Advantix was comprised of exempt work.

In summary, the court concludes that Cunningham engaged in both exempt administrative work and outside sales work, and that in combination this exempt work amounted to her primary duty at Advantix. The court therefore concludes that Cunningham was exempt from the overtime requirements of the FLSA, and thus, that Advantix is entitled to summary judgment on Cunningham's FLSA claim.

### III.  CONCLUSION

In accordance with the foregoing, the court concludes that Advantix is entitled to summary judgment on all five of Cunningham's claims. Accordingly, Advantix's motion for summary judgment is **GRANTED**. Judgment will be entered for Advantix. Advantix's objections to Cunningham's summary judgment evidence are **DENIED** as moot.

**SO ORDERED**

April 20, 2020.

A. JOE FISH
Senior United States District Judge